[S. F. No. 5863. In Bank.—April 22, 1913.]

## C. H. McKENNEY, Receiver of the Property of the Sutter Creek State Bank, Appellant, v. EDWARD A. ELLSWORTH, Respondent.

AGENCY—NOTICE TO AGENT WHEN IMPUTED TO PRINCIPAL—AGENT FOR CORPORATION ACTING FOR HIMSELF AND ALSO FOR PRINCIPAL.—The general rule, that where an agent of a corporation is dealing with the corporation in a transaction in his own behalf, it will not be presumed that he will communicate to his principal facts affecting the transaction, is subject to the exception that if the agent is in fact acting for his principal in the transaction, even though he may have an opposing personal interest, it is his duty, notwithstanding his interest, to communicate to his principal any facts in his possession, material to the transaction, and the law will therefore presume, in favor of third persons, that he made such communication.

ID.—BANK—DISCOUNTING NOTE PAYABLE TO PRESIDENT—NOTICE OF DEFENSES AVAILABLE AGAINST PAYEE—INDORSEMENT NOT IN DUE COURSE.—A bank, whose president had actual control of all its affairs, and who personally superintended and directed the discount by it, before maturity, of a promissory note belonging to himself and of which he was individually the payee, is charged with notice of any defense to the note known to the president at the time of the discount, affecting the validity of the instrument as an obligation binding to the extent declared by its terms, and cannot claim the benefits conferred by the law merchant upon an indorsee of a negotiable instrument in due course. It acquires the rights merely of an assignee of a chose in action.

ID.—ASSIGNMENT OF CHOSE IN ACTION—ACTION BY ASSIGNEE WITHOUT PREJUDICE TO DEFENSES AND SET-OFFS AGAINST ASSIGNOR—NOTICE OF ASSIGNMENT.—The general rule stated in section 368 of the Code of Civil Procedure, that an action by an assignee of a chose in action "is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment," is applicable in every instance, except to the case of a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before maturity. The transfer of a non-negotiable instrument, or of a negotiable instrument after maturity, or before maturity to one not taking in good faith or for value, is not protected.

ID.—SET-OFFS ARISING FROM COLLATERAL MATTERS AVAILABLE AGAINST MALA FIDE INDORSEE OF NEGOTIABLE PAPER.—In view of that provision of the code, the defenses to which an indorsee of negotiable

paper after maturity, or taking with notice before maturity, is subject, are not limited to equities arising out of the transaction in which the paper was executed and existing at the time of the transfer, but include as well set-offs arising out of collateral matters.

Id.—Set-offs Arising Before Receipt of Notice of Transfer to Bank.—The bank so discounting the note payable to its president, took the same subject to set-offs existing in favor of the maker, based upon other notes executed by the president to him, which arose prior to the receipt by him of notice of the transfer to the bank. Such set-offs are available, whether arising prior to or after the transfer to the bank, if they arose before the receipt by the maker of notice of the transfer.

Id.—Parol Evidence Varying Legal Effect of Note—Immaterial Evidence.—In an action by the bank to enforce the note so transferred to it, in which the defendant set up the defenses of a payment on account and a set-off based upon a note given him by the payee at the time of such payment, the admission of parol evidence that at the time the latter note was given it was agreed between the parties thereto that it should be deemed as a receipt for the payment, was without prejudice.

Id.—Grossly Inadequate Consideration for Transfer—Evidence.—In such action evidence was admissible to attack the adequacy of the consideration for the transfer of the note to the bank. Gross inadequacy of consideration for the transfer might be considered in determining whether the indorsee took in good faith.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Harding & Monroe, and Robert H. Borland, for Appellant.

Oliver Ellsworth, for Respondent.

SLOSS, J.—The plaintiff, as receiver of the Sutter Creek State Bank, brought this action upon a promissory note executed by defendant on June 20, 1907. The note was in the sum of seven thousand five hundred dollars, and was made payable one year after its date to the order of Jackson Dennis. The complaint alleges that before maturity the said note was, for value, indorsed and delivered by the payee to the Sutter Creek State Bank, which ever since has been the owner and holder thereof. The answer denies the indorsement by

Dennis to the bank before maturity or for value, or at all, denies the allegation of nonpayment, and alleges affirmatively the full payment of the note. It further sets up, as separate defenses and counterclaims, 1. The making by Jackson Dennis to defendant, prior to the alleged indorsement of the note sued upon or notice thereof to defendant, of a promissory note in the sum of five thousand dollars, payable one day after its date of July 27, 1907, the nonpayment of said note, together with the allegation that, at the time the note in suit was indorsed to the Sutter Creek State Bank, said bank had notice of the five thousand dollar note given by Dennis to Ellsworth, and that it took the seven thousand five hundred dollar note from Dennis without any good consideration, and not in good faith; 2. The making by Dennis to Ellsworth, on September 7, 1907, of a second note for ten thousand dollars, payable ninety days after date. The other allegations regarding this note are similar to those just recited in connection with the five thousand dollar note.

Upon a trial by jury a verdict was rendered in favor of the defendant. Plaintiff appeals from the judgment, bringing the proceedings before us by means of a bill of exceptions.

The evidence showed that the note in suit had in fact been indorsed and delivered before its maturity by Dennis to the Sutter Creek State Bank. It was not claimed by the defendant that any payment had been made by him to the bank. The defenses were based entirely upon transactions between the maker and the original payee. It was essential to the verdict in favor of the defendant that the jury should have found that, as alleged in the answer, the bank was not an indorsee for value and in good faith. This issue was presented to the jury by the instructions of the court, and the general verdict must be read as a finding thereon against the plaintiff. Such finding is assailed as against the evidence.

The claim of the defendant, supported by his own testimony, was that on July 25 or 26, 1907, he had paid Dennis five thousand dollars to be applied on the seven thousand five hundred dollar note. The payment was not indorsed on the instrument. He also claimed an offset upon the note for five thousand dollars given by Dennis to him on July 27, 1907, and set up in the answer. The note in suit was then owned by Dennis, his transfer to the bank not taking place

until August 1, 1907. With respect to the position of the bank, the question is whether the bank, at the time it took under the indorsement, had notice of this payment or offset. Dennis was president of the bank, and the only notice to the bank is that which, as respondent asserts, is to be imputed to it by reason of the fact that its president, Dennis, had knowledge of the payment and offset. The familiar rule that a principal is bound by the knowledge of his agent, acquired in the course of the agency, rests upon the presumption that the agent will communicate to the principal the facts learned by him, as it is his duty to do. But, says the appellant, where an agent of a corporation is dealing with the corporation in a transaction in his own behalf, it will not be presumed that he will communicate to his principal facts affecting the transaction. (*Bank* v. *Burgwyn,* 110 N. C. 267, [17 L. R. A. 326, 14 S. E. 623]; *McDonald* v. *Randall,* 139 Cal. 246, [72 Pac. 997].) This is no doubt the general rule regarding the imputing to a principal of notice of facts known to an agent who is, in the particular transaction in question, acting in an interest adverse to that of his principal. But the rule is not without exceptions. If the agent is in fact acting for his principal in the transaction, even though he may have an opposing personal interest, "it is his duty, notwithstanding his interest, to communicate to his company (principal) any facts in his possession, material to the transaction, and the law will therefore presume, in favor of third persons, that he made such communication." (*Bank of Pittsburg* v. *Whitehead,* 36 Am. Dec. 186, note; *Le Duc* v. *Moore,* 111 N. C. 516, [15 S. E. 888].) In the case at bar there was testimony tending to show that Dennis, the president, conducted the affairs of the bank. There had been no meeting of the directors during the year 1907. The cashier, Dabovitch, followed the directions of the president. His testimony with reference to the transfer of the note in suit was that Dennis came into the bank, told him to make certain book entries with respect to this note and other papers, handed him the papers, and then told him to make certain other entries "on the other side" of his book. Dabovitch followed these instructions. On this testimony the jury was certainly justified in concluding that Dabovitch was not, on behalf of the bank, purchasing the note from Dennis, but

that he was merely obeying the orders of Dennis who occupied the dual position of seller of the note and the agent who was consummating the purchase on behalf of the bank. The case is thus entirely different from *McDonald* v. *Randall,* 139 Cal. 246, [72 Pac. 997], relied on by appellant. In that case the president of a bank transferred to it a note payable to himself. He had knowledge of a defense. But he did not act for the bank in the purchase. The note was purchased at a directors' meeting which was not attended by the president. We are satisfied that the evidence, of which we have given a mere outline, fully authorized the finding that the bank took with notice of every fact known to Dennis.

The bank, having notice, then, of a defense affecting the validity of the instrument as an obligation binding to the extent declared by its terms, was not in a position to claim the peculiar benefits conferred by the law merchant upon an indorsee of a negotiable instrument in due course. (Civ. Code, secs. 3123, 3124.) It, and the plaintiff, whose *status* is the same as that of the bank, had merely the rights of an assignee of a chose in action. Under the provisions of section 368 of the Code of Civil Procedure an action of such assignee "is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment." The section from which we have just quoted goes on to state that it "does not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before maturity." It would seem to follow that in every instance other than the one specified in the exception, the general rule of section 368 is applicable. The exception takes out of the rule the single case of the transfer of a negotiable instrument, for value, and in good faith, before maturity. A transfer of a non-negotiable instrument (*St. Louis Nat. Bank* v. *Gay,* 101 Cal. 286, [35 Pac. 876]) or of a negotiable instrument after maturity, or before maturity to one not taking in good faith or for value, is not protected. The terms of the code section fully dispose of the appellant's contention that the indorsee of negotiable paper after maturity or taking with notice before maturity, is subject only to "equities arising out of the transaction in which the paper was executed and existing at the time of the transfer but not subject to set-offs arising out of collateral

matters.'' This is, indeed, declared by Mr. Daniel to be the modern English doctrine, and to be the law in most of the American states. (Daniel on Negotiable Instruments, sec. 725.) It is, however, not universally accepted, and manifestly, cannot prevail in the face of a statute declaring a contrary rule. (Id., note.) Under a statute like section 368, the assignee of a chose in action, unless it be negotiable paper transferred in good faith and upon good consideration before maturity, takes it subject to any set-off or other defense existing at or before notice to the obligor of the assignment. (*McCabe* v. *Grey,* 20 Cal. 510; *Bank of Stockton* v. *Jones,* 65 Cal. 437, [4 Pac. 418]; see, also, *Benham* v. *Connor,* 113 Cal. 168, [45 Pac. 258]; *Hays* v. *Plummer,* 126 Cal. 107, [77 Am. St. Rep. 153, 58 Pac. 447].) Such defenses include, not only those arising out of the transaction which is the basis of the suit, but cross-demands ''independent in their nature and origin.'' (*St. Louis Nat. Bank* v. *Gay,* 101 Cal. 286, [35 Pac. 876]; Code Civ. Proc., sec. 438.)

In the case at bar, Ellsworth, the defendant, testified that he learned in the latter part of December, 1907, that the note in suit had been transferred by Dennis to the Sutter Creek State Bank. The jury evidently accepted this testimony as true. So accepting it, they were authorized to allow to the defendant any valid offsets asserted by him as against Dennis, if such offsets arose prior to such notice to the defendant of the transfer of the note sued upon. One of these offsets was the five thousand dollar note of July 27, 1907. This was not only prior to notice of transfer, but prior to the transfer itself. Before the introduction of this note, Ellsworth had testified that he had paid Dennis five thousand dollars on the seven thousand five hundred dollar note, and that Dennis had stated that the said seven thousand five hundred dollar note was not at hand and that for that reason he could not at once indorse the payment thereon. In the mean time, said Dennis, Ellsworth could hold the five thousand dollar note, which was handed by Dennis to Ellsworth, as a receipt. This testimony was objected to as an attempt to vary a written instrument by parol, an attempt, in other words, to show that a promissory note was a receipt. It is, of course, well settled, that promissory notes are written instruments, and that their terms cannot be varied by parol evidence. (*Brown*

v. *Spofford,* 95 U. S. 480, [24 L. Ed. 508].)    But we are unable to see that the plaintiff was in any way prejudiced by this testimony.  The answer of the defendant had pleaded payment and also a counterclaim or set-off on account of the five thousand dollar note.  He certainly had a right to testify, without regard to the five thousand dollar note, that he had paid five thousand dollars to Dennis on account of the note in suit.  And the note itself was admissible in support of the counterclaim or set-off relied upon.  If there had been no oral testimony connecting the payment with the set-off, each defense asserted would have been complete.  The note for five thousand dollars, viewed as a note, was quite as beneficial to defendant's case as it would have been if regarded as a receipt.

The situation of the ten thousand dollar note given by Dennis to Ellsworth was similar to that of the five thousand dollar note, except that the larger note was given after the transfer of the note in suit to the bank.  But, since it was, according to Ellsworth's testimony, given before notice of the transfer to the bank, it is, under the views expressed above, equally available as a set-off.  The only specific objection to the introduction of the ten thousand dollar note and the testimony regarding its making, was that the transaction occurred subsequent to the purchase by the bank of the note in suit.  This was not, as we have seen, a good objection.

The appellant offered in evidence a writing, dated January 2, 1909, executed by Ellsworth to Dennis.  His claim was that this agreement showed that the notes set up in the counterclaim had been discharged.  The court expressed the view that the document was not ''admissible for the purpose of showing that the defendant has not a counterclaim,'' but permitted the paper to go in evidence.  It was claimed that this was an erroneous limitation of the evidence offered, in that it did not permit the paper to be considered as discharging the notes set up in the answer, and thus depriving them of efficacy as offsets to the plaintiff's demand.  But we think the court below was right in its ruling, if that ruling is to be taken as declaring that the paper did not limit the right of the defendant to rely upon the notes as counterclaims. The document expressly reserves any defense or offset which Ellsworth may have on account of said notes, and declared

that Dennis is held "exempt from any further liabilities on account of said notes; keeping intact and accepting the equities and without prejudice to any off-set or counterclaim in my favor. . . ." The language "exempt from any *further* liability" shows clearly the intent of Ellsworth to retain so much of. his claim against Dennis as might be necessary to wipe out the amount of the note in suit. To construe the agreement as an absolute discharge of the full amount due on the notes, and a consequent surrender of the right of set-off would give to the paper an effect directly contrary to the intention plainly declared therein.

It is claimed that the court erred in permitting the introduction of evidence bearing upon the character of the notes turned over to Dennis in exchange for the note in suit. We think this evidence had a legitimate bearing upon the question whether the bank gave an adequate consideration for the transfer of the Ellsworth note to it. Gross inadequacy of consideration for a transfer may be considered in determining whether the indorsee took in good faith. (Daniel on Negotiable Instruments, 5th ed., secs. 777a, 778.) But if the evidence in question had no tendency to impeach the consideration given by the bank to Dennis, its admission could have worked no substantial prejudice to the appellant.

The instructions to the jury covered the case fully, and accurately defined the rules of law to be followed. On the material issues the evidence was conflicting, and the finding of the jury that the bank was not an indorsee in due course, and that the defendant had, as against the original payee, good defenses or offsets going to the full amount of the note in suit, are supported by substantial testimony.

The judgment is affirmed.

Shaw, J., Angellotti, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.