[Civ. No. 2744. First Appellate District, Division Two.—March 14, 1919.]

## THE NATIONAL BANK OF SAN MATEO (a Corporation), Appellant, v. LESLIE D. WHITNEY, Respondent.

[1] Banks and Banking — Signing of Blank Note — Completion by Cashier—Agency.—Where a depositor signs a blank promissory note and turns it over to the cashier of the bank with directions to fill it in and credit the proceeds to a given account upon receiving certain instructions, and such cashier thereafter, without having received the instructions, fills in the blanks in the note, he acts as the agent of such depositor and not of the bank.

[2] Id.—Legal Position of Parties.—When such note was filled in by the cashier, the legal position of the parties was exactly the same as if the depositor himself, on the date the note was filled in, had taken or sent to the bank a completely filled and signed note.

[3] Id.—Abstraction of Funds by Cashier — Loss.—If a depositor hands his promissory note to the cashier of the bank with instructions to charge the same to his personal account and credit the proceeds to the account of a given company, and such cashier charges the note to the personal account of such depositor and abstracts the amount of the note from the bank's funds, the loss will fall on the bank.

[4] Id.—Deposit of Note — Delivery — Acceptance.—If a depositor manually delivers his note to a bank, there is no delivery within the meaning of the law until the bank, or someone acting for it, takes affirmative action, which may be a mere oral consent to advance the

money represented by the note, the entry of the note in the books of the bank and the transfer of proper credit, or perhaps some other act; but, until the affirmative act is taken, there is no acceptance of delivery by the bank.

[5] ID.—DISREGARD OF PRESCRIBED CONDITIONS — DELIVERY.—If conditions prescribed by such depositor are fraudulently disregarded by the bank, or its agent, there is no delivery binding the maker, there being no meeting of minds.

[6] ID.—ABSTRACTION OF FUNDS BY CASHIER — CAUSE OF PREJUDICE.— Where the cashier placed the note in the bank's files and caused it to be charged to the account of the depositor and then abstracted the amount of the note from the bank's funds, the prejudice suffered by the bank was by reason of the theft by such cashier, and not by reason of the note.

[7] ID.—CONSIDERATION FOR NOTE — PRESUMPTION — BENEFITS.—The presumption of consideration because a note is written cannot overcome direct evidence that neither the depositor nor the company to whom he had directed that the proceeds be credited received any benefit from the transaction.

[8] PRINCIPAL AND AGENT — MISAPPLICATION OF FUNDS — LIABILITY OF PRINCIPAL—EXCEPTION TO RULE.—The rule that where one trusts another with commercial paper, either signed or unsigned, and the person trusted misapplies the funds received for such commercial paper, the loss falls on the trustor, because the wrongdoer is his agent, does not apply where such agent subsequently gets possession of the money of another principal.

[9] FINDINGS—CONCLUSION OF LAW—HARMLESS ERROR.—In an action to recover upon a promissory note, a finding "that no part of the principal sum or the interest on said promissory note is due or owing" is a conclusion of law, but where there was no delivery of, nor consideration for, the note, the finding is not prejudicial.

[10] ID.—CONSTRUCTION OF.—Findings must be construed together to uphold the judgment entered upon them.

[11] ESTOPPEL—INNOCENT PARTIES—ACTS OF THIRD—LIABILITY.—The rule that where one of two innocent parties must suffer by the acts of a third, the loss must fall upon the first negligent actor, can have no application where a depositor of a bank delivers to the cashier his promissory note, with instructions to charge the same to his account and credit the proceeds to a given company, and such cashier, after depositing the note in the bank's files, abstracts the amount of the note from the bank's funds.

[12] PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT—IMPUTED TO PRINCIPAL.—The rule that where an agent receives notice, it is not imputed to the principal if the agent is engaged in committing an independent fraudulent act upon his own account, is subject to the

exception that where the agent is the sole representative of the principal in the transaction, and does not deal with the principal, or with any other agent acting for him, the general law of agency is still applicable, and the knowledge of the agent is imputed to the principal.

[13] APPEAL — AFFIRMATIVE DEFENSE — FAILURE TO FIND UPON — REVERSAL OF JUDGMENT.—A judgment will not be reversed for failure to find upon an affirmative defense if the record does not show that evidence was introduced in support thereof, or where the evidence introduced was not sufficient to support a finding in favor thereof, if such finding had been made.

[14] ID.—ERROR—INJURY.—Upon appeal, it is incumbent upon the appellant to show not alone error, but injury from error.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Walter H. Linforth and Ross & Ross for Appellant.

Norman A. Eisner for Respondent.

HAVEN, J.—This suit was to recover three thousand dollars on an instrument, in form a promissory note, dated July 14, 1915, and signed by the defendant. Defendant denied the execution of the note and the debt, and in a separate defense and by way of cross-complaint alleged facts to which further reference is made in this opinion, and which were claimed to constitute a complete defense to the action.

The judgment was in favor of the defendant. On this appeal by plaintiff numerous contentions are made, for an understanding of which it is necessary to state the facts disclosed by the evidence.

The Leslie Salt Refining Company was a corporation of which Leslie D. Whitney was the president, his brother St. John Whitney was a member of its board of directors and business manager, and W. M. Roberts was a stockholder and a director. Roberts was also the cashier of the plaintiff bank. The Salt Company and Leslie D. Whitney were both customers of the plaintiff bank, and had been frequent borrowers for at least five years prior to July 1, 1915. All of the dealings of the defendant, both individually and on behalf of the Salt Company, with the bank had been carried on with Roberts as

cashier.   On June 30, 1915, the defendant, Leslie D. Whitney, who was about to enter a hospital for treatment, visited the bank and explained to Roberts that the Salt Company might shortly thereafter require accommodation, and since its bank loans were already close to its margin of credit, he, Whitney, desired to leave in the hands of Roberts a blank note to be filled in by Roberts upon the order of his brother or himself, then to be charged to his personal account, and the proceeds to be applied to the credit of the Salt Company.   Under these conditions he signed the blank note and left it with Roberts. On the same day he went to the hospital, where he remained for some weeks.   On July 14, 1915, without having received instructions from either of the Whitneys, Roberts filled in the blanks of the note over the name of Whitney for three thousand dollars.   [1]   Roberts was clearly acting as the agent of Whitney and in violation of his trust in filling in the note, but so long as it remained in his possession, no one was injured by his action.   [2]   When the note was filled in by Roberts the legal position of the parties was exactly the same as if Whitney himself, on July 14, 1915, had taken or sent to the bank a completely filled and signed note in the words of the instrument in suit.   [3]   If on that day Whitney had handed the note to Roberts with instructions to charge the same to his personal account and to credit the proceeds to the Salt Company account, and Roberts had charged the note to the personal account and had abstracted three thousand dollars of the bank's funds, there could be no question as to the loss falling upon the appellant.   With the three thousand dollar note in his possession as the agent of Whitney, Roberts did what neither Whitney himself, nor his agent, could have done.   By virtue of his position as cashier of the bank, he placed the note in the bank's files and caused it to be charged to Whitney's personal account.   It is claimed by the appellant that this act on the part of Roberts constituted a delivery of the note from Whitney to the bank.   It is true that there was manual tradition of the note from Roberts as Whitney's agent to the bank's papers in violation of Roberts' duty to Whitney.   If Roberts' activities had terminated at that point, however, there could be no doubt that the bank could not have recovered on the note, because there was no consideration at that time passing to Whitney or suffered by the bank.   All further dealings with the note and with the

bank's accounts must have been had by some employee or agent of the bank. The note being in possession of the bank, and the control of it having passed entirely from Whitney and his agent, Roberts, or some other employee of the bank, abstracted three thousand dollars of the bank's cash, the note being charged to the personal account of Whitney to hide the peculation. It was the bank's money which was stolen and not Whitney's. The bank could not have recovered on the note in its possession before the theft, and it cannot recover on the note because of the theft of its own funds by its own officer or employee. If a merchant sends his bookkeeper to his bank with a check for three thousand dollars to be deposited, and the bookkeeper delivers the check to the bank's teller with instructions to deposit the proceeds to his employer's account, and the teller destroys the deposit slip and treats the check as a cash transaction, abstracting the money and not crediting the deposit account of the merchant, the loss, of course, would fall on the bank. The principles of law applicable to this transaction are so clear that citation of authority seems unnecessary. The judgment of the lower court was in accordance with these principles. The only questions open are whether or not the contentions of the appellant in its attack upon the findings are convincing.

The lower court found that the note in suit was never made, executed, or delivered to the plaintiff by the defendant. On behalf of the appellant it is said there is no evidence to contradict the facts: (1) That the defendant signed the note; (2) that he left it with Roberts; (3) that on the date of the note and before its maturity Roberts placed the note in the possession and in the files of the plaintiff; (4) that the employees of the bank entered the note on the day of its date in regular course of business on the books of the bank; (5) that the note remained in the possession of the plaintiff until the trial. These facts correspond in detail with the statement above made. When Roberts placed the note in the files of the bank there was manual tradition, but there was no delivery in legal effect. Roberts, as the cashier of the bank, when he placed the note in the bank's files had no intention of giving either Whitney or the Salt Company credit for it. Manual tradition was not accepted by the bank in the ordinary course of business, and the delivery, without such acceptance, was not effectual at law. (8 Corpus Juris, p. 210,

sec. 340; 1 Daniels on Negotiable Instruments, sec. 63.)   [4] If a customer manually delivers his note to a bank, there is no delivery within the meaning of the law until the bank, or someone acting for it, takes affirmative action, which may be a mere oral consent to advance the money represented by the note, the entry of the note in the books of the bank and the transfer of proper credit or perhaps some other act; but, until the affirmative act is taken, there is no acceptance of delivery by the bank.   [5]   If conditions prescribed by the maker of the note are fraudulently disregarded by the bank, or its agent, there is no delivery binding the maker, for the reason that there is no meeting of minds.   In this case it is contended that when Roberts, or someone acting under his direction for the bank, charged the note against the account of Whitney, that act constituted an affirmative act necessary to complete delivery; but the record shows that while a charge was made against Whitney, credit was not given either to Whitney or to the Salt Company.   Without such credit the delivery was neither complete nor binding.

It is next contended that under section 1605 of the Civil Code the bank suffered a prejudice by reason of the note, in that Roberts, the bank's cashier, obtained three thousand dollars of the bank's funds on the strength of the note, and, therefore, that the second finding that the note was without consideration is not supported by the evidence.   [6]   Manifestly the prejudice suffered by the bank was by reason of the theft and not by reason of the note.   If another customer of the bank whose account was overdrawn had called at the bank on July 14, 1915, and handed the cashier Roberts his note for three thousand dollars, with instructions to charge him with the note and credit the proceeds to his commercial account, and Mr. Roberts had placed the note in the files of the bank, charged it to its maker, but instead of giving the customer credit, had himself abstracted the money, it could not be claimed that the maker of the note was liable thereon.   This case presents the same situation.

The appellant relies upon the presumption of consideration because the note was written, and cites cases to the effect that the burden of showing a want of consideration rests upon the party seeking to avoid it.   [7]   The presumption cannot overcome the direct evidence in this case that neither

Whitney nor the Salt Company received any benefit from the note. (*Williams* v. *Hasshagen,* 166 Cal. 386, [137 Pac. 9].)

It is contended that, since Roberts was the agent of Whitney until the note passed into the possession of the bank, and since Roberts had access to the bank's cash, from which he abstracted three thousand dollars, the agent of Whitney received the proceeds of the note. The evident answer to this contention is that Roberts was not the agent of Whitney in abstracting the money from the bank nor in receiving it as a thief. [8] The large number of cases cited by the appellant simply establish the rule that where one trusts another with commercial paper, either signed or unsigned, and the person trusted misapplies the funds received for such commercial paper, the loss falls on the trustor, because the wrongdoer was at all times his agent. Where the agent subsequently gets possession of the money of another principal, as Roberts did in this case, the cases relied upon by the appellant do not apply. For instance, the appellant cites *Demarest* v. *Holdeman,* 34 Ind. App. 685, [73 N. E. 714], as an illuminating case. The bank in question was located at the town of Elkhart and one Kerstetter was its cashier. Finn, a depositor from the town of Goshen, handed Kerstetter two thousand nine hundred dollars to be by him deposited in the bank to Finn's credit. Kerstetter did not deposit the money. It was sought to hold the bank for Kerstetter's defalcation. The court very properly decided that Finn did not intrust the money to Kerstetter *as* cashier and that Kerstetter never received it as cashier, and, therefore, the bank never received it. In this case the facts are similar up to the point where Roberts placed the note in the bank's files and thereafter, solely as the bank's cashier, caused the entries to be made in the bank's books and took from the bank's cash the money to which as Whitney's agent he could have had no access.

The third finding was that no part of the principal or interest of the note had been paid and "that no part of the principal sum or the interest on said promissory note is due or owing." On behalf of the appellant it is maintained that the last clause of the finding is a conclusion of law. [9] This contention is correct, but as there was no delivery of, nor consideration for, the note, the appellant is not prejudiced by the addition of a clause which is but surplusage. [10] The findings must be construed together to uphold the judgment

entered upon them.  (*Flora* v. *Bimini Water Co.*, 161 Cal. 495, [119 Pac. 661].)

It is further claimed that the blanket findings of the truth of the allegations of the defendant's separate defense in the cross-complaint were not supported by the evidence. The argument is based on the contention that the cashier of the bank as such had no power to make the original agreement with Whitney in regard to filling in the note and carrying it to the credit of the Salt Company when instructed by Whitney or his brother to do so, for the reason that express authority had never been given him by the bank to that end. Whitney testified that he had had similar transactions, where he had left signed blank notes with Roberts as cashier of the bank, and the bank had carried through the transactions as agreed upon between him and Roberts. This evidence was sufficient to support findings 4 and 5.

It is sought to apply the rule that where one of two innocent parties must suffer by the act of a third, the loss must fall upon the first negligent actor. [11] The analysis of the facts of this case shows that the rule has no application here. As above stated, if Whitney himself had handed his filled in and signed note to Roberts in the bank with the instruction that Roberts should charge it to his personal account and give the credit to the Salt Company, it would have been an ordinary banking transaction and would have implied no suggestion of negligence on the part of anyone. This was exactly the position on July 14th, when Roberts put into the bank's files the fully filled in and signed note. His subsequent appropriation of three thousand dollars was not because of any negligence of Whitney, but by virtue of his connection with the bank.

Many cases are cited to support the proposition that where an agent receives notice, it is not imputed to the principal if the agent is engaged in committing an independent fraudulent act upon his own account. The contention is that the bank was not chargeable with any notice of the limited purpose to which the proceeds of the note could rightfully be applied, for the reason that the knowledge of its cashier Roberts on that matter was acquired by him in furtherance of his own fraudulent plan to rob the bank. [12] The rule contended for is subject to this well-established exception: Where the agent is the sole representative of the principal in the trans-

action, and does not deal with the principal, or with any other agent acting for him, the general law of agency is still applicable, and the knowledge of the agent is imputed to the principal. In such a case it makes no difference that the agent has an opposing personal interest, or is engaged in a personal fraud against his principal. This exception to the rule is clearly recognized in the cases of *McKenney* v. *Ellsworth*, 165 Cal. 326, 329, [Ann. Cas. 1915B, 261, L. R. A. 1916D, 127, 132 Pac. 75], and *Williams* v. *Hasshagen*, 166 Cal. 386, 393, [137 Pac. 9]. The cases from other jurisdictions are collated, and the two rules contended for by the opposing parties to this action are distinguished in a note in 2 L. R. A. (N. S.) 993. (See, also, Mechem on Agency, 2d ed., sec. 1825.)

The facts of the instant case bring it within the exception to the rule above referred to. Roberts alone acted for the bank throughout the entire transaction. In furthering his own fraudulent designs he dealt with no representative of the bank other than himself as its cashier. Here his knowledge as such must be imputed to the bank.

It is contended on behalf of the appellant that the note was not signed in the ordinary course of business. This, too, may be conceded. The method of signing and filling in the note has nothing to do with the case. It was signed by Whitney, it was filled in by his agent, and it was not until the note passed into the files of the bank that the bank had any interest in it.

The last contention of the appellant is that the finding that the defendant had done no acts and was guilty of no omission or conduct to estop him from denying the making, execution, and delivery of the note and alleging its want of consideration, is a conclusion of law, since an estoppel is always a deduction or conclusion, and cases are cited to this effect. Cases are also cited to the proposition that it is the duty of the court to find upon all the material issues. Facts were set up in the answer to the cross-complaint from which it was claimed the defendant was estopped. The facts set up in the answer to the cross-complaint, however, were simply a detailed statement of the facts set up in the cross-complaint itself. **[13]** "It is well settled that a judgment will not be reversed for failure to find upon an affirmative defense, if the record does not show that evidence was introduced in support thereof, and

the same rule must obtain where the evidence introduced was not sufficient to support a finding in favor thereof if such finding had been made." (*Estate of Barclay*, 152 Cal. 753, 758, [93 Pac. 1012, 1014].) If finding 6 is not a sufficient finding of fact from the evidence, the court could only have enlarged upon the statement that the defendant had done no acts upon which the claim of estoppel could be based.

The court found that the note was never delivered and that it "was and is entirely without and unsupported by consideration." Those findings control the judgment. Others are immaterial. [14] It is incumbent upon the appellant to show not alone error, but injury from error. (*Sewell* v. *Price,* 164 Cal. 265, [125 Pac. 407].)

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1919.

All the Justices concurred.