[L. A. No. 12474.   In Bank.—June 28, 1933.]

EMMA P. RHINOCK, Respondent, v. M. H. PRICE et al., Appellants.

Samuel W. Newman for Appellants.

McAdoo, Neblett & Clagett, McAdoo & Neblett and Frank G. Swain for Respondent.

CURTIS, J.—This action was instituted for the purpose of recovering the possession of a Lincoln automobile.

Plaintiff, at the commencement of said action, and for a long time prior thereto, was the owner of said automobile. During all the time herein mentioned E. L. Butler was the agent of the defendant Parisian Motors, Inc. (a corporation), as a salesman, under an agreement with said corporation that he was to receive one-half of the profits on all automobiles sold by him for said corporation. The Parisian Motors, Inc., had the agency for the Hispano Suiza automobile. The defendant H. Lew Zuckerman was the secretary-treasurer of said corporation. He has no personal interest in this action. The same may be said concerning the other defendants in said action, with the exception of the Parisian Motors, Inc. The plaintiff and the Parisian Motors, Inc., are, therefore, the only parties in interest herein and when we refer to defendant or appellant we mean the Parisian Motors, Inc. As the agent and salesman of the Parisian Motors, Inc., Butler apparently approached the plaintiff in an endeavor to sell to her an Hispano Suiza car. At least, in January, 1929, Butler came to Zuckerman, at the office of the corporation, and stated that he had a good prospect to sell one of the Hispano Suiza automobiles, and that it would be necessary in order to make said sale for him to buy a Lincoln car that belonged to the daughter of the proposed purchaser, and that he might need $500 to close the deal. Zuckerman gave Butler two checks for $250 each, to be used on the purchase of said Lincoln car. A few days later Zuckerman gave Butler $100 and finally another $100, for the same purpose for which he had given him the $500. In the meantime Butler had the Lincoln car in his possession, evidently endeavoring to sell it for the plaintiff. On February 15th Butler wanted more money from Zuckerman and offered to give the Lincoln car as

security for the money advanced to him by Zuckerman and for any future loans or advancements. Zuckerman declined to loan Butler any more money unless the Lincoln car was turned over to him, together with the "pink slip" or certificate of ownership. At some time, whether before or at the time Zuckerman demanded the "pink slip", Butler represented to the plaintiff that he had sold the Lincoln car and required the "pink slip" to consummate the sale. Plaintiff accordingly indorsed and delivered to him the "pink slip". Butler then delivered to Zuckerman the possession of the Lincoln car and the "pink slip". Zuckerman gave to Butler an additional sum of $200 and agreed to advance to him further amounts, not exceeding the sum of $1500, on the automobile. Zuckerman put the Lincoln car in his garage overnight and a few days thereafter, possibly the next day, returned the car to Butler for the purpose of enabling the latter to sell it. Zuckerman made additional advancements to Butler, the total amount of money so advanced being $1131. On March 22, 1929, while Butler was driving the Lincoln car, he met with an accident which caused his death. Zuckerman thereupon took possession of the car and later, on demand of the plaintiff, refused to deliver it to her. Hence this action. The trial court rendered judgment in favor of the plaintiff for the possession of the car and the defendants have appealed under the alternative method provided by section 953a of the Code of Civil Procedure.

As a ground for reversal of the judgment, appellant contends that the respondent was estopped from asserting any claim to said car prior or superior to that of the Parisian Motors, Inc. This contention is based upon the fact that the respondent had parted with the "pink slip", or *indicia* of ownership, together with the possession of the car, and, as against an innocent purchaser or pledgee, she was estopped from asserting her ownership of said car. In support of this contention, appellant relies upon the case of *Rapp* v. *Fred W. Hauger Motor Co.*, 77 Cal. App. 417 [246 Pac. 1067], which holds that an owner of an automobile who has clothed another with the *indicia* of ownership of his automobile is estopped, as against an innocent purchaser or encumbrancer thereof, from asserting his ownership or right of possession to said automobile. The principle enunciated

in that case would apply to the instant case if the Parisian Motors, Inc., at the time it acquired possession of said automobile was an innocent encumbrancer thereof.

■ The trial court made no specific finding as to whether the appellant was or was not an innocent encumbrancer of the Lincoln car at the time it acquired possession thereof. It made, however, a general finding that the plaintiff was at the time of the commencement of said action, and at all times thereafter, the owner of and entitled to the immediate possession of said car. This finding must be accepted as at least an implied finding that appellant did not acquire possession of said car without notice, either actual or imputed, of the plaintiff's ownership thereof. ■ There is evidence in the record that might warrant the conclusion that the appellant through its secretary-treasurer, Zuckerman, had actual notice of respondent's ownership of said car, or at least had sufficient knowledge of facts to put it on inquiry as to Butler's claim of ownership. Zuckerman testified that Butler first came to him and told him that he had a good prospect to sell a Hispano Suiza car, provided he could buy the Lincoln car. Later he said that Butler told him he had purchased the car and still later Butler asked for a loan to close the deal and Zuckerman advanced money for that purpose, and later, when Butler asked for an additional loan, Zuckerman demanded the certificate of ownership and possession of the car as security. This additional loan was made upon the conditions imposed by Zuckerman. Zuckerman also testified that Butler told him that he must sell the Lincoln car in order to make the deal for the Hispano Suiza car. Why was it necessary for Butler, if he had purchased the Lincoln car from the respondent, to sell it in order that the respondent might purchase a Hispano Suiza car from the appellant? The only reasonable inference to be drawn from this testimony was that the respondent still owned the Lincoln car, or at least had a substantial interest therein. If the trial court from this evidence drew the conclusion that appellant was put on notice that Butler was not the real owner of said car, we think it was warranted in arriving at such conclusion, and we feel bound by its determination of that matter. We think any reasonably prudent person, acting in entire good faith, with this knowledge in his possession, would have made inquiry of the

true owner (whose name and address were on the certificate of ownership) before accepting the car as security for money loaded. ■ But even if the appellant had not actual knowledge sufficient to put it upon inquiry as to the true ownership of the Lincoln car, yet Butler had knowledge of all of the facts and knew that the respondent had never parted with her ownership of the Lincoln car. Butler was the agent of the appellant in the sale of Hispano Suiza cars and as such agent gained possession of the Lincoln car for the purpose of negotiating a sale of a Hispano Suiza car. The evidence does not definitely define the scope of Butler's authority, but it is undisputed that the knowledge gained by him was acquired while he was acting for appellant and in an endeavor to carry out the purpose of his employment. Under these circumstances we think the knowledge of Butler must be imputed to his principal, the Parisian Motors, Inc. "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, sec. 2332.) This is a familiar and well-established principle, and has been frequently expressly followed by this court. (*Christie* v. *Sherwood,* 113 Cal. 526, 530 [45 Pac. 820] ; *McKenney* v. *Ellsworth,* 165 Cal. 326, 329 [132 Pac. 75] ; 12 Cal. Jur., p. 775.) In the case of *McKenney* v. *Ellsworth, supra,* the rule was applied even when the agent was dealing with his principal in a transaction in his own behalf. In that case the court said: "Where an agent of a corporation is dealing with the corporation in a transaction in his own behalf, it will not be presumed that he will communicate to his principal facts affecting the transaction. (Citing authorities.) This is no doubt the general rule regarding the imputing to a principal of notice of facts known to an agent who is, in the particular transaction in question, acting in an interest adverse to that of the principal. But the rule is not without exceptions. If the agent is in fact acting for his principal in the transaction, even though he may have an opposing personal interest, 'it is his duty notwithstanding his interest, to communicate to his company [principal] any facts in his possession, material to the transaction, and the law will therefore presume, in favor of third persons, that he made such communications'." ■ The appellant,

the Parisian Motors, Inc., having either actual or imputed knowledge, or both, of respondent's rights in said Lincoln was not an innocent encumbrancer thereof. The rule therefore announced in *Rapp* v. *Hauger, supra,* does not govern this case, nor has it any applicability to the actual facts thereof.

There are other questions raised by respondent in support of the judgment, but inasmuch as we are of the opinion that the appeal is without merit for the reasons hereinbefore stated, it is not necessary to discuss these further questions.

The judgment is affirmed.

Seawell, J., Thompson, J., Preston, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.