### BENJAMIN A. STOKES

*v.*

### GEORGE E. RILEY *et al.*

*Filed at Ottawa May 12, 1887.*

1. TRUST—*equitable title in trustee—protected in equity.* A title of a mere trustee, based upon a deed executed for a valuable consideration paid by the *cestui que trust*, under properly framed pleadings, will, in a court of equity, be protected for the benefit of the latter, to the same extent as if the deed had been made to him.

2. PLEADING AND EVIDENCE—*in chancery—as to the character in which a right is claimed, whether as an individual or as trustee.* A party suing or defending in chancery, should disclose, by his pleadings, the right upon which he bases his claim. If he is suing in a representative capacity, it must be so stated or made to appear, otherwise he will be conclusively presumed to be acting in his own right.

3.  A party can not sue, in equity, in his individual character, and be permitted to recover as the trustee or representative of another, for that would be to permit him to sue for the invasion of one right and recover for the infraction of another.

4.  A bill for partition alleged that two of the defendants claimed to have some interest in the land under certain tax deeds and other instruments, which were alleged to be void as against the other parties. These two defendants answered separately, and the title set up by each was in his own right. The proof showed that the title set up by one of them was held in trust by him for the other, who was the equitable owner: *Held,* that such title could not be sustained, on account of the variance.

5.  But when the complainant averred that the title to the land was in him and one of the defendants, and charged that the title claimed by the other two defendants was void, and sought to have them set aside, and one of such defendants set up a title in himself, which the evidence showed he held in trust for the other, it was *held,* that evidence of such title might be considered as evidence supporting the general denial of the title claimed by the complainant and the other defendant.

6.  NOTICE—*of unrecorded deed—as, in the case of a sheriff's deed.* To afford notice of an unrecorded deed by the public records, the information given must be of that character that a prudent person, by the exercise of reasonable and ordinary diligence, could, upon inquiry and investigation, arrive at the fact of the existence of the prior unrecorded deed.

7.  Where a purchaser of land, on examination of the public records, finds a judgment against his vendor, and a certificate of the purchase of the land showing its sale under the judgment, but the record fails to show whether any sheriff's deed had been made, it will be incumbent on him to make inquiry and investigation of those likely to know the fact, to learn whether any sheriff's deed has been made, and failing to do so, he will be chargeable with notice of the existence of such deed, although it may not have been recorded.

8.  In this case, the public records of Cook county showed that on July 1, 1868, six writs of attachment issued out of the Superior Court against the owner of lots in the city of Chicago, which were levied on the lots; that judgments were obtained in the suits, upon which executions were issued, and levied on the lots; that the sheriff, on July 15, 1869, sold the premises; the issue of certificates of purchase, and the placing of them on record, and the dates of these transactions, and other details, and the abstract of the title failed to show any redemption. A sheriff's deed was made on August 25, 1873, which was not recorded until May 6, 1881. On July 17, 1875, the attachment debtor conveyed the lots by quitclaim deed, which was recorded July 22, 1875: *Held,* that these facts shown by the records and the abstract of title, were sufficient to put the purchaser from the attachment debtor upon inquiry, which would have apprised him of the existence of the unrecorded sheriff's deed, which therefore took precedence of the other deed.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. WILSON & MOORE, for the appellant:

The court erred in holding that Asahel Gage was a purchaser for value of the lots in question. He made no claim to be an innocent purchaser, by his answer, and therefore there could be no such finding. *Boone* v. *Childs*, 10 Pet. 207; *Brown* v. *Welch*, 18 Ill. 343.

The court erred in decreeing that Gage was not put upon inquiry as to whether a sheriff's deed had been issued upon the sale of the lots. *Reddin* v. *Miller*, 95 Ill. 336; *McConnell* v. *Reed*, 4 Scam. 117; *Cabeen* v. *Breckenridge*, 48 Ill. 94; *Rupert* v. *Marks*, 15 id. 540; *Merrick* v. *Wallace*, 19 id. 486; *Cox* v. *Milner*, 23 id. 422; *Morris* v. *Hogle*, 37 id. 150; *Railroad Co.* v. *Kennedy*, 70 id. 350; *Babcock* v. *Lisk*, 57 id. 327; *Shepardson* v. *Stevenson*, 71 id. 646; *Farrar* v. *Payne*, 73 id. 82; *Doyle* v. *Teas*, 4 Scam. 202.

A quitclaim will not cut off a prior unrecorded deed, unless such was the intention of the parties. *Butterfield* v. *Smith*, 11 Ill. 473; *McConnell* v. *Reed*, 4 Scam. 117; *Hamilton* v. *Doolittle*, 37 Ill. 473.

Mr. AUGUSTUS N. GAGE, and Mr. HENRY D. BEAN, for the appellees:

The attachment lien dated from the filing and recording of the certificate of levy. *Brown* v. *Niles*, 16 Ill. 385; *Jones* v. *Jones*, id. 117; *Gaty* v. *Pitman*, 11 id. 20.

The lien expired in seven years after the judgment. *Riggin* v. *Mulligan*, 4 Gilm. 50; *Scammon* v. *Swartwout*, 35 Ill. 326; *Ewing* v. *Ainsworth*, 53 id. 464; *Tenney* v. *Hemenway*, id. 97; *Rainey* v. *Nance*, 54 id. 38; *Hall* v. *Gould*, 79 id. 22; *Gridley* v. *Watson*, 53 id. 186; *Weiss* v. *Lienan*, 91 id. 27.

A person purchasing *bona fide*, after the expiration of the lien, will be protected. *Priest* v. *Wheelock*, 58 Ill. 114; *James* v. *Wortham*, 88 id. 69.

The certificate of purchase conveys no estate. The purchaser is regarded merely as a bidder, and has but a lien until he receives the sheriff's deed. *Johnson* v. *Baker*, 38 Ill. 98; *Sweezy* v. *Chandler*, 11 id. 445; *Stevens* v. *Insurance Co.* 43 id. 327; *McLagan* v. *Brown*, 11 id. 519; *Hays* v. *Cassell*, 70 id. 669; *Bowman* v. *People*, 82 id. 246; *Bissell* v. *Payne*, 20 Johns. 3.

The notice afforded by the recorded certificate of purchase, that a deed might afterward be issued thereon, expired at the time when, by law, a deed could no longer be issued upon the sale.

Independently of the statute, it is held in this State that a sheriff's deed executed upon the application of the holder of the certificate of purchase, without notice to parties interested, more than eight years and three months after the sale, is void. *Rucker* v. *Dooly*, 49 Ill. 377; *Harmon* v. *Larned*, 38 id. 167; *Dugger* v. *Oglesby*, 99 id. 405.

The statute in force at the time the sheriff's deed, in the case at bar, was executed, required the deed to be taken out within five years from the expiration of the time of redemption, in default of which the certificate of purchase should be null and void. Act of March 22, 1872, sec. 30; Rev. Stat. 1874, chap. 77, sec. 30; *Berry* v. *Lovi*, 107 Ill. 612.

Mr. Justice Mulkey delivered the opinion of the Court:

The appellant, Benjamin A. Stokes, exhibited his bill in the circuit court of Cook county, against George E. Riley, Henry H. Gage, Asahel Gage, and others, praying for the partition of certain lots in the city of Chicago. It is alleged in the bill that the complainant is the owner in fee of an undivided two-thirds interest in the lots, and that defendant Riley is the owner of the remaining third; that they derive title through an attachment sale and sheriff's deed, from Taylor V. Ward, the former owner of the premises. It is further

alleged that Henry H. Gage and Asahel Gage have, or claim to have, some interest in the property under certain tax deeds and other instruments, charged to be fraudulent and void, and a cloud on the title of complainant and said Riley. Asahel Gage answered, claiming to be a purchaser of the property through *mesne* conveyances from Ward, for a valuable consideration, without notice of Stokes' and Riley's title. By an amendment to the bill, the tax titles of the Gages are set out, together with the objections to them, from which it appears tax deeds were issued to Henry H. Gage for all the lots involved in this appeal. Henry H. Gage answered, alleging that he is the owner in fee of the property by virtue of "divers good and valid tax titles thereto." On the hearing, the court entered a decree dismissing the bill, from which Stokes appealed to this court.

As to the real facts in the case there is no ground for controversy. It is conceded that on July 1, 1868, Taylor V. Ward was the owner in fee of the lots in controversy, and the records show that on that day six writs of attachment, issued out of the Superior Court of Cook county, in favor of Ward's creditors, were levied upon said lots; that judgments were regularly obtained against Ward in said attachment suits, upon which general and special executions were issued, and duly levied on the premises by the sheriff of the county; that said sheriff, on the 15th of July, 1869, sold the premises to the plaintiffs in said attachment suits, for the aggregate amount of their several claims, and gave to them the usual certificate of purchase, which was recorded in the proper office on May 11, 1870; that said purchasers, for value, duly assigned the certificate of purchase to complainant, Stokes, and the said George E. Riley, who, on the 25th of August, 1873, received from the sheriff of Cook county a sheriff's deed for the premises, which was recorded May 6, 1881. By quitclaim deed bearing date July 17, 1875, and recorded on the 22d of the same month, Taylor V. Ward and wife, for the expressed con-

sideration of $50, conveyed "all interest" in the lots to Henry Brooks, who, on the 26th of the month, by like deed, recorded on the same day, conveyed the lots to Frederick W. Brooks. Frederick W. Brooks and wife, by quitclaim deed bearing date February 19, 1880, and recorded on the 10th of the following month, for the expressed consideration of one dollar, conveyed to Asahel Gage lots 1, 2, 3, 4, 5 and 8, which are the only ones involved in this appeal.

According to the testimony of Henry H. Gage, the real consideration for this last conveyance was $1000, paid by himself and for himself, to Brooks, all of which but a trifle was, as he claims, a balance due from the latter to the former upon an accounting between them. His testimony on this subject is pointed, clear and conclusive. He says, in substance, that Asahel Gage has never, either directly or indirectly, paid or furnished any part of the consideration paid Brooks for said lots; that so far as these last lots are concerned, the deed was made for witness' own use; that Asahel did not, and does not now, claim any beneficial interest in them, but that he does claim an interest in the other lots, namely, 13, 14, 15 and 16. The bill as to the lots last mentioned was dismissed, and consequently they are not before us.

Accepting this statement as true, which we can not do otherwise, as it is uncontradicted, it is clear enough that Asahel Gage is, at most, a mere trustee with respect to the property, having no beneficial interest in it whatever. So far, therefore, as he is personally concerned, it may be admitted that he has no rights under the Brooks deed which can avail against Stokes and Riley. But his title as trustee being based upon a deed executed for a valuable consideration paid by the *cestui que trust*, we think, under properly framed pleadings, is entitled to be protected for the benefit of Henry Gage, to the same extent as if the deed had been made directly to the latter, and for the purposes of the present decision it must be so regarded. It may be, and we do

not wish to be understood as expressing any opinion to the contrary, that if Asahel Gage had answered the bill in his character as trustee, alleging that the lots were conveyed to him by Brooks in trust for Henry H. Gage, his title in that character would have been protected as fully and completely as if the same matter had been set up by Henry H. Gage himself; but nothing of this kind was done. In reaching a conclusion in this case, we must, as in all others, look to the pleadings to see what the issues are, for the court has no right to determine any questions which are not fairly presented by the pleadings.

If one sues or defends in an equity proceeding, he must disclose, by his pleadings, the nature or character of the rights upon which he bases his claim for relief. If he is suing in a representative capacity, it must be so stated or made to appear, otherwise he will be conclusively presumed to be acting in his own right. He can not sue in his individual character and be permitted to recover as the trustee or representative of another, for that would be to permit him to sue for the invasion of one right and recover for the infraction of another. In the present case, as we have already seen, the complainant avers the title of the premises to be in himself and Riley, and then charges that the Gages claim to have some interest in the premises under certain tax deeds and other instruments, which are alleged to be void as against complainant and Riley. The Gages sever, in pleading. The claim set up by each of them in his answer, is in his own right, and not in the right of another. If they relied on a hostile paramount title, they should have set it up and proved it on the trial. This they respectively attempted to do, yet in a very imperfect manner.

But waiving all question as to the sufficiency of their answers, what do we find? Asahel Gage, defending in his own right, claims the property under certain deeds. These deeds, viewed as new affirmative matter set up by way of

defence, can not be sustained, for the reason the proofs conclusively show, as already seen, that he has no individual interest in the property. This, therefore, disposes of the case so far as he is concerned.

By the answer of Henry H. Gage it is alleged, as will be remembered, that he is the owner of the property by virtue of "divers good and valid tax titles thereto," etc. That there is no evidence in the record to sustain this averment in the answer, and others of similar import, is clear, beyond question. It is equally true that he sets up and relies exclusively upon the tax proceedings mentioned in the answer, as his only source of title.

If there was nothing more in the case than this, we think neither of the answers, in so far as they attempt to set up affirmative matter, presents any substantial defence to the bill. But the question arises, whether the deeds relied on by Asahel Gage to show title in himself, must not be considered as evidence supporting the general denial in the answers, of complainant's title. We are inclined to think they may be so considered. In this view, the question is presented, whether the sheriff's deed to Stokes and Riley, which is founded upon the attachment proceedings commenced July 1, 1868, loses its precedence over the other deeds by reason of the latter having been first recorded. Of course, the decision of this question depends upon whether the facts disclosed by the record of the attachment suits, were sufficient to put a reasonably prudent person upon inquiry. The rule in such cases, as recognized by this court, is well stated in *City of Chicago* v. *Witt*, 75 Ill. 211. It is there said: "The information must be of that character that a prudent person, by the exercise of reasonable and ordinary diligence, could, upon inquiry and investigation, arrive at the fact of the existence of such prior conveyance." To the same effect are *Doyle* v. *Teas,* 4 Scam. 202; *Rupert* v. *Mark,* 15 Ill. 540; *Heaton* v. *Prather et al.* 84 id. 330; *Hankinson* v. *Barbour,* 29 id. 80.

The facts relied on in this case to prove there was sufficient to put the Gages on inquiry, are partly shown by the records and partly by an abstract of title, and it affirmatively appears that appellees, through their counsel, had not only constructive but actual notice of all the facts relied on by appellant as being equivalent to notice of appellant's title. These facts, which, in the main, have already appeared, are, the suing out of the attachments, the recovery of the judgments, the issuing of the executions, the levy of the same upon the property and its sale by the sheriff, the issuing of the certificate of purchase to the purchasers and the placing the same upon record, together with the dates of these several transactions, and other details, as, amounts of judgments, executions, etc. There is also some evidence of a negative character, which should not be overlooked in this connection. The attachment sale, it will be remembered, occurred on the 15th of July, 1869, consequently the time for redemption, so far as Ward and those claiming under him are concerned, expired on the 15th of July, 1870, a year and near three months before the destruction, by fire, of the greater portion of the records in the following October. Now, if any redemption had occurred within the time allowed by law for that purpose, that fact, upon the presumption that officers do their duty, we must assume, would have appeared of record, and the very fact that no such redemption was noted upon the abstract, is a circumstance tending strongly to show that the property was not redeemed, for it may be assumed that no intelligent abstracter would overlook or fail to note so important a fact as this.

The purchasers at the attachment sale acquired the right to have the land conveyed to them or their assigns at the expiration of the time of redemption, if the same, in the meantime, should not be redeemed. Of this appellees clearly had notice. Now, if this was not sufficient to put the appellees upon inquiry, then nothing short of the record of the sheriff's deed

would be sufficient, in which case, of course, the doctrine we are discussing would then have no application, for there would be nothing to inquire after. The investigation made by appellees' counsel does not seem to have been conducted in that way which would most likely have led to a discovery of the fact which the law made it their duty to ascertain,—namely, whether a sheriff's deed had been issued. Having examined the records and found all that appeared there, and that being sufficient to make it uncertain whether such deed had been issued or not, it was then their manifest duty to make inquiry from such persons as would most likely have known the truth of the matter,—such as counsel for plaintiff, sheriff and purchasers. One of the records examined by counsel showed the names of plaintiff's attorneys in the attachment suits, who most likely knew that the deed had been issued. But neither appellees nor their counsel seem to have availed themselves of any of these sources of information. (See cases above cited.) Nor, in short, does it appear that inquiry was made of any one who would most likely have been able to enlighten them on the subject. These investigations should always be made with care, and in good faith. The law exacts this, and is satisfied with nothing less. We do not think the law, in this respect, was sufficiently observed by appellees or their counsel.

The decree below will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*