UNION TRUST CO. *v.* MATTHEWS.

1. BILLS AND NOTES—RESTRICTIVE INDORSEMENTS—NEGOTIABILITY.
   Where indorsee of pledged notes held them either in trust or as agent of indorser, indorsement was restrictive under negotiable instruments law (2 Comp. Laws 1929, § 9285, subds. 2, 3), and therefore they were no longer negotiable (section 9296), although, under trust agreement, indorser was authorized to sell in case of default of indorser in performance of trust agreement.

2. SAME—DEFENSE OF FRAUD AVAILABLE WHERE INDORSEMENT RESTRICTIVE.
   Indorsee of pledged note where indorsement is restricted, being limited to bring action thereon that indorser could bring, may not recover where note was obtained by fraud; note not being negotiable (2 Comp. Laws 1929, § 9286, subd. 2, § 9296).

3. STATUTES—CONSTRUCTION—NEGOTIABLE INSTRUMENTS—BILLS AND NOTES—RESTRICTIVE INDORSEMENTS.
   Provision of negotiable instruments law destroying negotiability of note where title is vested in indorsee in trust for some other person, being plain, there is no room for construction; its wisdom being legislative and not judicial question (2 Comp. Laws 1929, §§ 9285, 9286, 9296).

ON REHEARING.

4. BILLS AND NOTES—EVIDENCE—PAROL EVIDENCE—INDORSEMENT IN TRUST.
   Parol evidence is competent to show that note was indorsed to holder for some special purpose and is held in trust.

5. SAME—RESTRICTIVE INDORSEMENTS—HOLDER IN DUE COURSE.
   Where plaintiff took notes as mere agent of payee, its indorser, and also as mere trustee under trust agreement, it is not holder in due course (2 Comp. Laws 1929, §§ 9285, 9286, 9296).

Error to Oakland; Gillespie (Glenn C.), J. Submitted June 2, 1931. (Docket No. 5, Calendar No.

35,588.) Decided December 8, 1931. Submitted on rehearing April 5, 1932. Decided June 6, 1932.

Assumpsit by Union Trust Company, a Michigan corporation, against Charles D. Matthews on promissory notes. Directed verdict and judgment for defendant. Plaintiff brings error. Affirmed on rehearing.

*Bulkley, Ledyard, Dickinson & Wright* (*Harold R. Smith* and *George Haggarty,* of counsel), for plaintiff.

*Barbour & Martin* (*Frank A. Martin* and *Chester P. O'Hara,* of counsel), for defendant.

CLARK, J. Plaintiff as indorsee and as trustee sued defendant on his certain promissory notes. At the conclusion of proof, both parties requested directed verdict. Verdict was directed for defendant and judgment entered. Plaintiff has appealed.

The decisive question is that the indorsement to plaintiff was restrictive, that it, therefore, was not a holder in due course under negotiable instruments law, but took subject to infirmity that the notes had been obtained from defendant by fraud.

Fred J. Horning, trading as Prudential Discount Company, desired to borrow money from time to time on his promissory notes, and to that end entered into agreement with plaintiff, stated in part as follows:

Horning's notes to be given from time to time were to be secured by deposit and pledge as collateral of certain notes "now owned or which may be hereafter acquired by him arising from the sale of automobiles" or "made with automobiles as security." Upon the pledge and deposit of such col-

lateral notes, Horning was to issue to the public, or investors generally, his own promissory notes in an agreed form, called collateral trust notes, containing a recital that they were secured by collateral pledged with plaintiff as trustee in an amount one and one-fifth times the face value of issued collateral trust notes, and being certified by the trustee to be so secured by collateral. The total of outstanding collateral trust notes was at no time to exceed 83⅓ per cent. of the paper held by the trustee as security. In case of real excess at any time of collateral over outstanding collateral trust notes, Horning was entitled to ask for and obtain the return of excess automobile paper so deposited as collateral. Respecting the notes so deposited or pledged as collateral, the plaintiff trustee agreed to "retain the same in its own custody and possession until the maturity thereof," to notify makers of approaching maturity, and to receive payment. If any pledged note was not paid at maturity it was to be returned to Horning if the agreed margin of security over total of outstanding collateral trust notes was not thereby impaired, and, if such return would so impair, then plaintiff might itself proceed to enforce collection of the note. In the event of real excess of cash from collections of such pledged notes over outstanding collateral trust notes, Horning was to be paid the excess. In case any of the outstanding collateral trust notes was not paid by Horning at maturity, then the plaintiff might, and upon request of holders of a majority in amount of certified collateral trust notes outstanding, should declare the principal of all such notes to be at once due and payable and sell at private sales or public auction, after notice to Horning, such of the paper pledged as security as might be necessary.

Later Prudential Discount Company became a corporation, to which Horning assigned. Automobile notes were deposited from time to time. Many certified trust notes were issued and are outstanding. Excess cash collections were released to Prudential Discount Company from time to time. Defendant's notes, given to Prudential Discount Company, were deposited by it and were received by the trustee as automobile notes, although they were not such, which fact, in our view, is not important.

None of plaintiff's own money was used or advanced in this matter. Finally, Prudential Discount Company failed to pay collateral trust notes outstanding, and plaintiff was obliged to attempt collection of the notes held by it as collateral for the benefit of the holders of the certified trust notes outstanding. This suit is part of that attempt.

The indorsement to plaintiff of defendant's notes was special in form (2 Comp. Laws 1929, § 9283), but it is conceded by plaintiff that the indorsement was in fact to plaintiff as trustee under the trust agreement (*Catlin* v. *Birchard,* 13 Mich. 110).

We quote applicable sections of negotiable instruments law (2 Comp. Laws 1929, §§ 9285, 9286, 9296):

"SEC. 38. An indorsement is restrictive, which either:

"First, Prohibits the further negotiation of the instrument; or

"Second, Constitutes the indorsee the agent of the indorser; or

"Third, Vests the title in the indorsee in trust for or the use of some other person. But the mere absence of words implying power to negotiate does not make an indorsement restrictive.

"SEC. 39. A restrictive indorsement confers upon the indorsee the right:

"First, To receive payment of the instrument;

"Second, To bring any action thereon that the indorser could bring;

"Third, To transfer his rights as such indorsee, where the form of the indorsement authorizes him to do so.

"But all subsequent indorsees acquire only the title of the first indorsee under the restrictive indorsement."

"SEC. 49. An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise."

Was the indorsement here in fact restrictive under section 38?

The indorsement in fact as shown by the trust agreement prohibits further negotiation of the notes deposited or pledged by the indorser except in case of failure or default of the indorser in performance of the trust agreement, in which event plaintiff indorsee might sell the pledged collateral. Negotiability (2 Comp. Laws 1929, § 9279), therefore, was not fully prohibited, so decision is not under the first provision of the section, but will be rested on the second and third provisions.

It will appear from what has been said of the trust agreement that the indorsee, plaintiff, was, relative to the pledged notes, chiefly agent of the holders of the collateral trust notes, but it was also in some respects agent for the indorser. But it is clear that it held the pledged notes either in trust for the holders of the said trust notes or as agent of the indorser. Therefore, the indorsement in fact falls within the second and third provisions of the section and is restrictive. The effect of this is, under section 49, that the notes after being thus restrictively indorsed were no longer negotiable. More-

over, under section 39, plaintiff indorsee under restrictive indorsement may bring any action on the notes that the indorser could bring. The indorser could not recover against defendant because of the fraud. Plaintiff's rights, as indorsee, being so limited under section 39, and the note not being negotiable under section 49, it likewise may not recover.

An indorsement under the second provision of section 38, usually a collection indorsement, constitutes the indorsee the agent of the indorser, the beneficial interest remaining in the indorser. The effect of such indorsement is, of course, to restrict further negotiability. But indorsement for the benefit of a third person transfers the title to the instrument to the indorsee, the whole interest is in the trustee and his beneficiary, and it is difficult to see why such indorsement is treated as giving notice of defenses of prior parties, why it stops negotiability. Suggestion that by construction the statute be held to mean what it does not mean cannot be followed. There is nothing to construe. The statute is perfectly plain and must be observed.

As supporting this view regarding trustee indorsements, we cite *Gulbranson-Dickinson Co.* v. *Hopkins,* 170 Wis. 326 (175 N. W. 93). And see *Werner Piano Co.* v. *Henderson & Reese,* 121 Ark. 165 (180 S. W. 495), as to result. The Wisconsin case has been criticised (Brannan's The Negotiable Instruments Law [4th Ed.], p. 319), as unsound, but the decision is squarely upon the negotiable instruments law, and whether the statute is wise or unwise is a legislative not a judicial matter.

A fair statement upon the law as applied in the Wisconsin case is quoted from 34 Harvard Law Review, p. 84:

"Effect of the Negotiable Instruments Law.—
The payee of six promissory notes made by the de-
fendant was indebted to the plaintiff. As collateral
security for this debt he delivered the defendant's
notes to the X bank indorsed: 'Pay to the order
of the X bank for credit account of the plaintiff.'
Unknown to either the plaintiff or the X bank the
consideration given for the notes had failed. The
notes were dishonored at maturity. Subsequently
the X bank indorsed them to the plaintiff, who sues
the defendant as maker. *Held,* that the plaintiff
cannot recover. *Gulbranson-Dickinson Co.* v. *Hop-
kins,* 170 Wis. 326 (175 N. W. 93).

"A restrictive indorsement for the benefit or use
of a third person passes the legal title to the in-
dorsee as trustee for the third person. *Hook* v.
*Pratt,* 78 N. Y. 371; The Negotiable Instruments
Law, § 36 (3). See Norton, Bills and Notes (3d
Ed.), §§ 62–64. Where a trustee takes legal title
for a valuable consideration paid by the *cestui que
trust,* the trustee is treated as a purchaser for value.
See *Stokes* v. *Riley,* 121 Ill. 166, 171 (11 N. E. 877).
Taking a negotiable instrument as collateral secu-
rity for a pre-existing debt is a parting with value.
See Brannan, The Negotiable Instruments Law (3d
Ed.), § 25. Hence the X bank was a holder in due
course at common law, and the plaintiff could have
sued in its own name since a transferee from a
holder in due course has all the rights of his trans-
feror, even though the transfer is made after matu-
rity. *Chalmers* v. *Lanion,* 1 Campbell, 383 (170 Eng.
Repr. 993). This result seems eminently just, but
it is hard to reach under the Negotiable Instruments
Law. Section 37, sub-section 2 gives an indorsee
under a restrictive indorsement the right to bring
'any action (on the instrument) that his indorser
could bring.' In the principal case the indorser
could not have recovered from the defendant since
there had been a failure of consideration; hence the

X bank was barred. And since 'all subsequent indorsers acquire only the title of the first indorsee under the restrictive indorsement' the plaintiff cannot recover.''

Judgment affirmed.

BUTZEL, C. J., and WIEST, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.

## ON REHEARING.

CLARK, C. J. We relieve counsel of responsibility for the concession that indorsement here, though special in form, was restrictive in fact, and so hold on our own account, and adhere to former opinion.

Parol evidence, it is argued, was not admissible to vary the indorsement special in form. Exceptions to general rule, denying admissibility of parol evidence to vary or explain the contract implied from indorsement, are discussed, with citation of authorities in a note, 4 A. L. R. 776. We quote:

''One exception is that it may be shown that the indorsement was to an agent. * * *

''A second exception is stated to be that parol evidence is competent to show that the note was indorsed to the holder for some special purpose and is holden by him in trust.''

See Ogden, Negotiable Instruments (3d Ed.), p. 501.

The chief question in the case, the title of the payee, plaintiff's indorser, being defective, was whether plaintiff was a holder in due course.

Evidence showing that plaintiff took the notes as a mere agent of the payee, its indorser, and also as a mere trustee under the trust agreement, established under the sections of the negotiable instruments law

quoted in main opinion that plaintiff was not a holder in due course, and was clearly admissible.

It would be remarkable if one might indorse, specially or in blank, a negotiable instrument to his agent and prevent all inquiry of the character of the agent's holding by invoking the parol-evidence rule. And, under negotiable instruments law, this is likewise true of indorsement to trustee.

Affirmed.

McDONALD, POTTER, SHARPE, WIEST, and BUTZEL, JJ., concurred with CLARK, C. J. NORTH and FEAD, JJ., concurred in the result.