[Civ. No. 10824. Second Appellate District, Division Two.—June 5, 1936.]

WILLIAM JAMES HONAN et al., Respondents, v. NATIONAL THRIFT CORPORATION OF AMERICA (a Corporation) et al., Defendants; FRANK C. MORTIMER, as Receiver, etc., Appellant.

Elvon Musick and Howard Burrell for Appellant.

McGee & Robnett, Daly B. Robnett and Robert Lee Collins for Respondents.

GOULD, J., *pro tem.*—There is no serious conflict as to the facts in this case. Plaintiffs, husband and wife, the latter acting through a duly authorized attorney-in-fact, executed their promissory note dated July 25, 1932, in the principal sum of $45,000, secured by deed of trust in favor of defendant Estelle Escallier. The latter was simply a "dummy", advancing no part of the money and having no interest whatever in the transaction. Her appearance in the matter was solely for the purpose of so concealing the facts as to permit defendant National Thrift Corporation, the real party in interest, to secure an unearned 15 per cent upon the face of the loan as a "bonus" for the supposed purchase of the note from the nominal payee.

Oral negotiations between plaintiffs and the agent and general manager of National Thrift Corporation were to the effect, so the court upon substantial evidence found, that plaintiffs' $45,000 note and trust deed were to be placed in escrow, that the sum of $6,000 was to be advanced to plaintiffs upon the signing of the note, and the remainder of the total of $38,250 (being the amount of the note after deduction of the 15 per cent "bonus") was to be paid by National Thrift Corporation in instalments over a period of ten months, during which time the note was to remain in escrow.

An escrow was opened, but the written documents signed by plaintiffs and defendant Escallier authorized a very different course of procedure than that orally agreed upon, so that pursuant to the written escrow instructions the note for $45,000 was endorsed by defendant Escallier to defendant National Thrift Corporation and by the latter endorsed and delivered, together with the trust deed, to defendant Metropolitan Trust Company, plaintiffs receiving only the initial payment of $6,000. Explaining the fact that the written escrow instructions and agreement differed so radically from the previous oral understanding as to the transaction, plaintiffs and defendant Escallier testified that they did not read the writings which they signed, because the agent and repre-

sentative of Thrift Corporation told them it was unnecessary and a matter of form, and that the written documents simply embodied the matters contained in their oral agreement.

As part of its business activities National Thrift Corporation sold to the public its bonds, "thrift certificates" and annuity contracts. To protect the purchasers of such paper defendant Metropolitan Trust Company acted as holding trustee for Thrift Corporation under a trust agreement, "Private Trust No. 109", the terms of which provided for the deposit of cash or notes secured by trust deeds and mortgages with Metropolitan Trust Company as collateral, against which National Thrift might issue its bonus certificates and contracts. The ownership of this trust estate remained in National Thrift which under the trust indenture reserved the right to withdraw any notes from the trust estate and substitute others in their stead. The trustee was also empowered to call upon National Thrift to replenish the funds of the trust estate so as to maintain it at the 110 per cent collateral required by the trust indenture. At the very time of the Honan transaction, it was found by the court, National Thrift Corporation was in default in the sum of about $30,000 in its collateral security.

The Honan note was dated July 25, 1932; it was transmitted to Metropolitan Trust Company, to become one of the assets of Trust No. 109, July 27th; a federal receiver in equity was appointed for National Thrift Corporation September 8; a federal receiver for Trust No. 109 of Metropolitan Trust Company was named November 19th, and in January of 1933 a receiver in bankruptcy for National Thrift Corporation was appointed.

The within action was brought by plaintiffs for the cancellation of their note and trust deed upon the grounds of fraud, deceit and misrepresentation, and to quiet their title to the land covered by the deed of trust. The federal receiver for Trust No. 109 of Metropolitan Trust Company offered the only active opposition to plaintiffs, who won in the trial court, and such receiver prosecutes this appeal.

It is appellant's contention that the note in question is negotiable in form, came into the hands of Metropolitan Trust Company "in due course" and is therefore not subject to attack for fraud, failure of consideration or any other defect in title. Respondents rest their case upon the trial court's

findings of fraud and misrepresentation, and upon the proposition that the note was rendered nonnegotiable by reason of the fact that it passed to the trust company, by reason of the peculiar facts shown in the case, with a restrictive endorsement.

The trial court found that fraud and deceit was practiced upon respondents in that agreements were made without intention of fulfillment that the note would be held in escrow by the Thrift Corporation until the full amount was paid thereon, and also that false representations were made in respect to the solvency of such corporation and its ability to make monthly payments upon said note. There also was testimony and a finding that the vice-president and manager of the escrow company which handled the Honan escrow was at the same time assistant trust officer of the Metropolitan Trust Company, to which the Honan note was delivered out of escrow after only $6,000 had been paid upon it to the makers. As the person having supervision over escrows, this matter was brought to his knowledge, it was found by the court. The trust company of which he was likewise an officer was therefore charged with his knowledge of the transaction which the corporation was handling. (*McKenney* v. *Ellsworth*, 165 Cal. 326 [132 Pac. 75].)

No California authority has been cited by counsel covering a state of facts comparable to that here involved and construing the law of restrictive endorsements. (Civ. Code, secs. 3117, 3118.) The Michigan Supreme Court, however, in the case of *Union Trust Co.* v. *Matthews*, 258 Mich. 433 [242 N. W. 781], has had occasion to deal with the problem under a closely parallel factual situation and under provisions of the Uniform Negotiable Instruments Law identical with those here involved. In that case the court said: "It will appear from what has been said of the trust agreement that the indorsee, plaintiff, was, relative to the pledged notes, chiefly agent of the holders of the collateral trust notes, but it was also in some respects agent for the indorser. But it is clear that it held the pledged notes either in trust for the holders of the said trust notes or as agent of the indorser. Therefore, the indorsement in fact falls within the second and third provisions of the section and is restrictive. The effect of this is, under section 49, that the notes after being thus restrictively indorsed were no longer negotiable. Moreover,

under section 39, plaintiff indorsee under restrictive indorsement may bring any action on the notes that the indorser could bring. The indorser could not recover against defendant because of the fraud. Plaintiff's rights, as indorsee, being so limited under section 39, and the note not being negotiable under section 49, it likewise may not recover." And on rehearing the court further stated: "The chief question in this case, the title of the payee, plaintiff's indorser, being defective, was whether plaintiff was a holder in due course. Evidence showing that plaintiff took the notes as a mere agent of the payee, its indorser, and also as a mere trustee under the trust agreement established under the sections of the negotiable instruments law quoted in the main opinion that plaintiff was not a holder in due course, and was clearly admissible."

Based upon the reasoning and authority of the above-cited Michigan case, we hold with the trial court herein that the note involved passed to the trust company with a restrictive endorsement and subject to attack for fraud or other imperfection in title. Such holding in this case would not, as appellant contends, "prevent a trustee from ever becoming a holder in due course". ▮ The decision herein carries no such generalized implication, and goes no further than to hold that under the peculiar facts of this case—the flagrant fraud practiced upon respondents, the knowledge of the escrow holder, whose manager was an officer of the trust company endorsee, the measure of control exercised by the National Thrift Corporation over the assets after their transfer to the trustee, the fact that the trust company acted only as holding trustee for the private trust created by the Thrift Corporation —the trust company was not a *bona fide* holder or a holder in due course, so as to render the note impervious to attack.

▮ Appellant also complains as to the disposition which the trial court made with reference to the $6,000 which it is admitted respondents received from National Thrift Corporation upon the execution of the note. Treating the note as usurious on account of the exaction from the makers of the 15 per cent "bonus", the court decreed that, while respondents were indebted to National Thrift Corporation in the sum of $6,000, the money was not due until July 25, 1937, the expiration date of the usurious loan. Also, relying upon

the provisions of the Usury Law (Stats. 1919, p. lxxxiii), the court refused any interest upon the $6,000 advancement.

Appellant is not in a position to object as to the court's action with relation to the $6,000. That matter concerns defendant National Thrift Corporation alone, and no appeal having been taken by said defendant the judgment of the trial court as to it and as to the disposition of the $6,000 is final. Appellant not being in any manner concerned as to the item in question, it may not be heard to complain thereof upon appeal. (*Lake* v. *Superior Court*, 187 Cal. 116 [200 Pac. 1041].)

Judgment affirmed.

Crail, P. J., and Wood, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1936.