[Civ. No. 6526. First Appellate District, Division One.—January 30, 1929.]

LIBERTY BANK, Appellant, v. ELWOOD NONNENMANN et al., Respondents.

Ross & Ross, Maurice T. Dooling, Jr., and F. A. Devlin for Appellant.

Fletcher A. Cutler for Respondents.

CAMPBELL, J., *pro tem.*—This is an action upon two promissory notes in the principal sum of $2,500 each executed by the defendant Elwood Nonnenmann and by his father Charles L. Nonnenmann, since deceased, as makers in favor of the California Bank of San Mateo County, as payee, and transferred after maturity to the plaintiff Liberty Bank. The defendants Elwood Nonnenmann and Emma Adelaide Nonnenmann, as administratrix of the estate of Charles L. Nonnenmann, deceased, filed answers in which they denied the execution of the notes and that there was anything due thereon; that plaintiff acquired the notes after maturity and is not a holder in due course; that the notes were executed without consideration and were not delivered to the payee, and the proceeds thereof were not deposited to the credit of the makers nor paid to them, and a special defense of fraud, which is in the main as follows: that for many years prior to September 1, 1923, the Nonnenmanns, father and son, were intimately acquainted with and reposed confidence in one Ray Falvey; that Falvey was on that date assistant cashier of the Peninsula Bank in Burlingame, where all of the parties resided; that on or about September 1, 1923, Falvey conceived a fraudulent scheme to defraud Charles L.

Nonnenmann of various sums of money, including the proceeds of the notes here sued upon; that in pursuance of such scheme Falvey represented to Charles L. Nonnenmann that a certain automobile business was of the value of $6,000, free of debt and being conducted at a profit; that if the elder Nonnenmann would advance $3,000 Falvey would purchase a one-half interest in this business for the other Nonnenmann and would supervise and manage such interest; that such representations were false and known to be false; that the elder Nonnenmann, in reliance on these representations, paid the sum of $3,000, and it was deposited in the Peninsula Bank to the credit of the Mann-Nonnenmann Motor Company, under which name the business was conducted; that Falvey, as cashier of the Peninsula Bank, wrongfully and without the knowledge of the Nonnenmanns appropriated said money to his own use and that of the Peninsula Bank; that thereafter Falvey became cashier of the California Bank of San Mateo County, payee of the notes in suit and continued to manage and superintend the affairs of the Mann-Nonnenmann Motor Company, and the accounts of the motor company were transferred to the California Bank of San Mateo County; that pursuant to such fraudulent scheme Falvey on or about October 10, 1924, fraudulently induced Nonnenmann, Sr., to advance $2,500 to purchase new automobiles, which amount was deposited in the California Bank of San Mateo County to the credit of the motor company; that Falvey at this time was cashier and manager of such bank, manager and superintendent of the Mann-Nonnenmann Motor Company and secretary and manager of the Peninsula Acceptance Corporation and had control of the books of all three institutions and so kept the accounts of the bank with the motor company as to show a fictitious indebtedness on October 10, 1924, of $2,500 from the motor company to the bank; that such fictitious indebtedness was caused by Falvey diverting the money of the motor company to his own use and that of the Peninsula Acceptance Corporation; that Falvey appropriated the $2,500 to his own use and that of the bank; that on or about November 1, 1924, Falvey was managing the automobile business under the name of Nonnenmann Motor Company—defendant Elwood Nonnenmann having become the sole owner thereof; that Falvey on or about November 30, 1924, fraudulently

represented to Nonnenmann, Sr., that the motor company was solvent, free of indebtedness, and was being conducted at a profit and requested Nonnenmann, Sr., to sign the two promissory notes in suit, representing the proceeds would be used to purchase automobiles for the motor company, and relying on such representations the notes were signed; that Falvey had so manipulated the books of the three institutions as to show a fictitious indebtedness from the motor company to the bank of $5,000 and that the proceeds of the notes were not used to buy new automobiles but were appropriated to their own use by Falvey and the bank.

Plaintiff proved the execution of the notes by Charles L. Nonnenmann and Elwood Nonnenmann; the transfer of the notes to plaintiff; that they constituted a part of plaintiff's assets and remained unpaid; introduced the notes in evidence; proved the appointment of Emma Adelaide Nonnenmann as administratrix of the estate of Charles L. Nonnenmann, deceased, and the presentation of the claim upon the notes.

Defendants, in support of their claim of fraud, introduced testimony that in 1923 Walter J. Mann was engaged in the business of selling automobiles; that in September of that year Ray Falvey, who was an intimate friend of the Nonnenmanns and in whom they reposed confidence and who was at the time connected with the Peninsula Bank, suggested to the Nonnenmanns that Nonnenmann, Sr., buy a half interest in the automobile business of Mann for $3,000 for young Nonnenmann, who was then twenty-three years of age, which business Falvey represented to be free from debt and agreed that he would keep the books and take care of everything; that acting upon such representations Nonnenmann, Sr., gave his check for $3,000; that at the time Mann owed the Peninsula Bank a note of $1,500, and that this note was paid out of the $3,000 check given by Nonnenmann, Sr.; that Mann was offering his business for sale for $3,000 and Falvey told him he could get $3,000 for a half interest; that Mann never got any of that money; that when Falvey became cashier of the California Bank of San Mateo County the account of the automobile business was transferred to that bank; that at the time of the purchase of the half interest in Mann's business Falvey was assistant cashier of the Peninsula Bank; that with respect to the notes in suit, according to the testimony of Elwood Nonnenmann, Falvey

told Nonnenmann, Sr., that "he was short in the finance company, and he needed the money to buy automobiles, that if my Dad would sign the notes, the bank would give the finance company the money and he would never hear of it thereafter. . . . Q. What did your father say to Mr. Falvey? A. He asked him, he said, 'Mr. Falvey, I will never be called upon to pay this note?' and Mr. Falvey said, 'You won't, everything will be taken care of.' . . . Mr. Falvey said he would never be called upon to pay this note, that he would cancel it right out and everything would be all right."

The case was tried before a jury, which rendered its verdict for defendants, and from the judgment entered upon such verdict plaintiff has appealed.

▮ Appellant urges that defendants should not have been permitted to offer evidence in support of their defense that the notes were given for a particular purpose, viz.: to purchase automobiles, because they did not show that Falvey was authorized to make such an agreement and that it was not in the ordinary course of the bank's business; that while Falvey, as cashier, had authority to do everything necessary or proper and usual in the ordinary course of business for the purpose of effecting his agency (Civ. Code, sec. 2319), the buying of automobiles was neither necessary nor proper, nor in the usual or ordinary course of the bank's business nor was it for the effecting of the purpose of his agency, and that the cashier had no authority to promise Nonnenmann, Sr., that he would never be called upon to pay the notes, and cites *State Bank* v. *Forsyth,* 41 Mont. 249 [28 L. R. A. (N. S.) 501, 108 Pac. 914], as holding that officers of banks have no power to excuse or limit the legal obligations of persons to banks or to excuse or limit such obligations by agreeing that they shall not be called upon to pay obligations which they make, and Magee on Banks and Banking, second edition, page 156, announcing the rule to be "that beyond the ordinary business of the bank his (cashier) acts must be authorized and directed by the board of directors."

In this state it is held that if conditions prescribed by the maker of the note are fraudulently disregarded by the bank or by the cashier, its agent, there is no binding delivery as there is no meeting of minds (*National Bank of San Mateo* v. *Whitney,* 40 Cal. App. 281 [180 Pac. 845]; *Williams* v.

*Hasshagen,* 166 Cal. 386 [137 Pac. 9]). Here Falvey was the agent of the bank in receiving the notes payable by their terms to the bank and comes, we think, within the rule laid down in *First National Bank* v. *Reed,* 198 Cal. 259 [244 Pac. 371]. "In the situation presented here the sole representative of the bank was the cashier and acting manager. The bank cannot claim anything except through him and therefore if it claims through him it must accept his agency with its attendant notice of his knowledge of the facts as they actually existed. The bank cannot in one breath be heard to say that the cashier was without authority to bind itself and accept the note upon condition that it was an accommodation note for which the defendant should not be liable and in the next breath insist that it can avail itself of his act in taking the note. It cannot avail itself of only so much of the transaction as was beneficial to it and repudiate the rest. If it relies upon the note, it must take it with the terms upon which the cashier took it, namely, that the defendant should not be responsible. The bank must take the burden with the benefits, and by demanding performance of the contract the bank assumes responsibility for the instrumentalities—that is to say, the representation, promises, and conditions—through which the act was induced. The law is well settled that in case a principal seeks to recover upon a contract in which the agent exceeds his authority, he must take the contract as a whole. It follows from what we have said that Reed, having given his note with the express understanding with the cashier and manager of the bank that he would not be called upon to pay the note, he cannot now in a suit wherein the bank is plaintiff, and no rights of innocent third parties intervene, be held liable." Here, as in the case just quoted from, the notes were assigned after maturity and the question of innocent purchasers for value is not involved.

Appellant contends that permitting the defendants to offer evidence concerning the fraud alleged in inducing the Nonnenmanns to purchase the half interest in Mann's automobile business, which occurred while Falvey was assistant cashier of the Peninsula Bank and before he became connected with the California Bank of San Mateo County and further permitting testimony that the name of Charles L.

Nonnenmann signed to the articles of incorporation of the Nonnenmann Motor Company, executed on February 21, 1925, something over two months subsequent to the making of the notes in suit, was forged by Falvey, all of which testimony was received over appellant's objection, prejudiced its case and was error.

Appellant urges that as Falvey at the time he induced Charles L. Nonnenmann to advance $3,000 to buy a half interest in Mann's automobile business was not the agent of plaintiff's assignor, the California Bank of San Mateo County, but was the agent of the Peninsula Bank, his representations at that time were not binding upon the California Bank of San Mateo County and consequently not upon plaintiff, and that the evidence offered to establish the fact that Falvey forged the name of Charles L. Nonnenmann to the articles of incorporation of the Nonnenmann Motor Company shows this act, if it occurred, to have occurred subsequent to the execution of the notes in suit, citing in support of its contention the familiar rule that an agent can bind his principal only when his acts are within the scope of his authority, and that the acts of an agent beyond his authority are the acts of a stranger (1 Cal. Jur. 827). We do not question this principle, but here the testimony was not received to bind the California Bank of San Mateo County, but to show the motive and intent of Falvey in securing the signatures of the Nonnenmanns to the notes in controversy. "Where the fraudulent intent of a party in the performance of an act is in issue, proof of similar fraudulent acts is relevant and admissible to establish his intent or motive in the performance of the act in question, when it appears there is such a connection between such other acts and the act in question as to authorize the inference that both are parts of one scheme or plan in which the same motive is operative, and it is immaterial whether such other fraudulent acts occurred before or after the act in question as remoteness in point of time affects only their weight" (*Marlatt* v. *Couture*, 41 N. D. 127 [169 N. W. 582]; *Albrecht* v. *Rathoi*, 150 Minn. 256 [185 N. W. 259]). Cases of fraud are exceptions to the general rule that other offenses may not be shown. Where fraud is charged, therefore, evidence of other frauds or fraudulent representations of like

486

character committed by the same parties at or near the same time, is admissible (*Bone* v. *Hayes,* 154 Cal. 767 [99 Pac. 172]; *Kornblum* v. *Arthurs,* 154 Cal. 248 [97 Pac. 420]; *Thompson* v. *Modern School,* 183 Cal. 112 [190 Pac. 451]). As the issue here on the question of fraud is whether Falvey practiced a fraud in inducing the Nonnenmanns to sign the notes in question, evidence of other frauds practiced upon them at the times alleged is relevant on the question of his intent or motive. ▆ "Although a party litigant cannot be concluded or his rights affected by the acts or statements of strangers, yet in so far as such acts or statements furnish circumstantial evidence of relevant facts or have any legal operation material to the subject of inquiry, evidence thereof is admissible." (*Liberty Bank* v. *Ernst,* 93 Cal. App. 560 [269 Pac. 959].)

▆ Appellant complains that the following instructions were not directed to any evidence in the case: "I instruct you that if you find from the evidence that said prior promissory notes were fully paid and canceled before the promissory notes in controversy were executed and that the notes in controversy were not executed for the purpose of paying and canceling said prior notes, then said prior notes form no part of the consideration for the giving of the notes in controversy," and, "if you find from a preponderance of the evidence that Falvey as cashier of said bank withdrew and took said money from said bank and used said money for any other purpose than for the purchase of automobiles for said Nonnenmann Motor Company, then I instruct you that the said bank was liable to the said Charles L. Nonnenmann for the wrongful diversion of the money, and your verdict must be for defendants." As to the former instruction it may be said that the testimony of Mann and Nonnenmann is to the effect that all notes executed to the bank were accompanied by sales contracts as security; that Falvey was entrusted with the collection of the proceeds and that these proceeds, together with the income of the business collected by Falvey, were ample to extinguish all notes that had been executed to the bank; that when Mann withdrew from the firm there was a final settlement between the bank and the motor company; that there was no claim that Nonnenmann's name remained on any unpaid note. Mrs. Nonnenmann

testified that when the notes in question were executed nothing was said by Falvey of any unpaid notes and the records produced do not show any credit of $5,000 to the Mann-Nonnenmann Company. ■ As to the latter instruction there is no evidence that the proceeds of the two notes were deposited to the credit of the motor company. There is evidence, however, that the notes were delivered to Falvey, the cashier of the bank; that the money was not used to purchase automobiles, for which testimony shows the notes were given, and the records of the bank show no transaction involving the renewal of any notes, and the jury could, if it thought such facts justified, draw the inference that Falvey appropriated such money to his own use. Falvey having become possessed of the proceeds of the notes as cashier of the bank—and if he received the proceeds as the testimony supporting defendants' claim shows that he did—to purchase automobiles for the motor company, he as the representative of the bank was bound to so use the proceeds (*National Bank of San Mateo* v. *Whitney, supra*).

■ Appellant assigns the conduct of counsel for defendants in referring to the verdict of the jury in *Liberty Bank* v. *Ernst, supra,* in which the judgment was reversed, as error, asserting that it was highly prejudicial to bring before the jury the reference to this other case with the innuendo that another jury had found Falvey guilty of fraud. The conduct complained of occurred during the cross-examination of Falvey, while he was being interrogated concerning $1,500 involved in a stock sale, the witness stating that Mr. Ernst borrowed the money from the bank to give to Mr. Nonnenmann. Counsel for defendants then asked of the witness: "Didn't the jury decide that was not so?" This being assigned as misconduct and the court stating that this could not be gone into, counsel for respondent reiterated his reference to the verdict in the other trial as follows: "He made the same contention before another jury and the other jury failed to see it in that light." Neither in his oral argument nor in his brief has counsel offered any justification for this improper reference to the verdict of the jury in the other case, nor do we attempt to justify it. However, as the evidence so amply supports the verdict, we feel the same result would have obtained had this reference to the verdict

of the jury in the other trial not have been made, and that the error, therefore, was not prejudicial.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 1, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1929.

All the Justices present concurred.