[L. A. No. 13740. In Bank.—March 30, 1934.]

LILLIAN E. EVANS, Respondent, v. GRACE INA GIBSON et al., Executrices, etc., et al., Appellants.

Anderson & Anderson and Frederick M. Kincaid for Appellants.

J. K. Wilson and J. C. Landry for Respondent.

THE COURT.—Plaintiff Lillian E. Evans owned real property in the city of San Diego which was found by the court to be of the reasonable value of $31,500, and was subject to encumbrances in the amount of $15,500. She was induced to exchange said real property for a promissory note in the sum of $16,000, executed by defendant James L. O'Donahue. This note, together with another note for $16,000, also executed by O'Donahue, was secured by a second deed of trust lien for $32,000 on property in Riverside County known as the Granite Hill Ranch. Plaintiff prayed judgment against all defendants for $16,000, with interest, on the theory that the note transferred to her and found by the court to be worthless would have been worth its face value if the representations had been true which, she alleged, were made to her, in pursuance of a conspiracy between the defendants, concerning the financial responsibility of the maker, O'Donahue, and the value of the Granite Hill Ranch as security. (12 Cal. Jur. 843.)

The court entered judgment in favor of plaintiff for actual damages in the sum of $21,313.06, which represents

the face value of the note plus interest, and for exemplary damages in the sum of $5,000. Of the several defendants, only Grace I. Gibson and Thelma Gibson, as executrices of the estate of John W. Gibson, and Frederick M. Kincaid have appealed. It is contended that if the judgment is not reversed, at least it should be modified by reducing the amount of interest included as actual damages, and by eliminating the award of exemplary damages against defendant executrices. Plaintiff's appeal from an order granting a new trial as to defendant Grace I. Gibson in her individual capacity was heretofore dismissed. (217 Cal. 171 [17 Pac. (2d) 701].) An order granting a new trial is appealable only in an action tried by a jury where trial by jury is a matter of right. (Sec. 963, Code Civ. Proc.)

The essentials of the fraudulent scheme which the court found was perpetrated on plaintiff were as follows: John W. Gibson, who died before trial, and whose executrices were made parties defendant, was the beneficial owner of the Granite Hill Ranch, but record title thereto stood in the name of defendant Frederick M. Kincaid, who was Gibson's lawyer. The court found that the value of said ranch did not exceed $22,000. On December 5, 1927, Kincaid executed a deed to the ranch naming James L. O'Donahue, his brother-in-law, as grantee. On the same date O'Donahue executed three notes, payable to Kincaid, for the total sum of $77,000, one for $45,000 and two for $16,000 each. One of the $16,000 notes was payable one year from date, and the other two years from date. The note for $45,000 was secured by a first deed of trust lien executed by O'Donahue on the ranch, and the two $16,000 notes by a single deed of trust for $32,000, which was a second lien. At the same time O'Donahue signed and delivered to Gibson a deed to the ranch naming Gibson's daughter, Thelma Gibson, as grantee, which deed was never recorded. O'Donahue was a single man, under thirty years of age, and was employed as a truck driver at a wage of $4.50 a day. He was without other assets, and, as noted above, was Kincaid's brother-in-law.

This transaction with O'Donahue, plaintiff contends, and the evidence will support no other inference, was not a *bona fide* sale or transfer, but was a simulated transaction had solely for the purpose of bringing into existence the

several notes and deeds of trust therein executed, with the intent and design that said instruments should be used to cheat and defraud persons ignorant of the circumstances of their origin.

The $45,000 note secured by a first deed of trust, which was for a sum far exceeding the value of the Granite Hill Ranch as fixed by the court, was transferred to Mrs. Ellis Hill Rogers on December 23, 1927, in exchange for unencumbered property in Pasadena. Gibson took title to the Rogers property in the name of Kincaid, and within a short time traded it for real property in Glendale.

The $16,000 note due two years from date was assigned in February, 1928, to a Mrs. Andrews, who gave in exchange therefor residence property in San Diego. Mrs. Andrews brought an action against certain of the defendants herein which was compromised before trial.

The $16,000 note due one year from date, on December 5, 1928, was transferred to plaintiff herein, Lillian E. Evans, in exchange for her real property in San Diego, consisting of a building with several stores and apartments and worth $16,000 over and above all encumbrances. The exchange was consummated on April 5, 1928, through an escrow in the office of a title insurance company in San Diego. Plaintiff was induced to make the exchange in reliance on false and fraudulent representations made by defendant Fred A. Newby, also known as Albert Newby. Newby falsely represented that the ranch had recently been purchased by a millionaire at a price of $135,000, and that the purchaser had paid $25,000 in cash, turned in other real property, and for the balance executed the note and deed of trust for $45,000, which was secured by a first lien, and the two $16,000 second lien notes, one of which was being offered to plaintiff. It was represented that the owner of the ranch was in poor health and could not be seen; that the climate of Riverside County where the ranch was situate was beneficial to the asthmatic condition from which he suffered; that he had already spent large sums in improving the ranch, and contemplated making further expenditures; that a large acreage was planted in lemons, and that the proceeds of the lemon crop alone would be sufficient to pay the note which was offered to plaintiff. In fact, a small acreage was planted in lemons, and the

ranch was in such condition that the county horticultural commissioner served notice to abate black and red scale, which infested the trees, as a nuisance.

It was further falsely represented that the purchaser of the note for $45,000 secured by the first deed of trust was Rogers, the silverware king (obviously intended to connote a connection with the Rogers Bros. company well known manufacturers of silverware), and that he had made a thorough investigation of the ranch prior to his purchase of the $45,000 note and had received a bank appraisement of $97,000; that by reason of the wealth of the owner of the ranch the note offered to plaintiff would be paid promptly at its maturity on December 5, 1928, and was ''as good as cash'', as Mrs. Andrews, the holder of the $16,000 note due after the note offered plaintiff would be required to protect plaintiff in order to preserve her own security. In substantiation of these representations there was exhibited to plaintiff a duplicate of a certificate, dated December 30, 1927, guaranteeing title to the ranch in the sum of $104,000, which Gibson had procured and delivered to Newby.

No payments whatsoever were made on either of the $16,000 notes, and the only payment made on the $45,000 note, assigned to Mrs. Rogers, was a quarterly payment of interest due in March, 1928, in the sum of $787.50. Kincaid gave O'Donahue the money with which this payment was made. He claimed that he made this payment for services rendered by O'Donahue in inspecting land for him in Oregon, but this explanation is too inherently improbable to be given credence. The court below no doubt inferred that the quarterly interest was paid to preserve the appearance of a *bona fide* transaction until both $16,000 notes should be disposed of. Mrs. Rogers subsequently foreclosed.

Appellants contend that the evidence fails utterly to establish that either John W. Gibson, Grace I. Gibson, his wife, or Frederick M. Kincaid was a guilty participant in the fraud which Newby perpetrated on plaintiff. The trial court found against this contention, and in our view could reach no other reasonable conclusion on the evidence before it. Over the objection of counsel for defendants Gibson and Kincaid, the court permitted plaintiff to introduce evidence as to the transactions with Mrs. Rogers and Mrs. Andrews, respectively, relating to the $45,000

note and the second maturing $16,000 note, executed contemporaneously with the note which plaintiff received, and evidence as to certain transactions involving the ranch which were had prior to execution of said notes.

The evidence discloses that the exchange with plaintiff was not an entirely separate and distinct transaction, but one of a series of successive transactions closely following each other in time and part of a comprehensive plan for mulcting innocent persons. Where a charge of fraud is made, evidence of similar transactions is admissible. (*Thompson* v. *Modern School, etc.,* 183 Cal. 112 [190 Pac. 451]; *Kornblum* v. *Arthurs,* 154 Cal. 246 [97 Pac. 420]; *Liberty Bank* v. *Nonnenmann,* 96 Cal. App. 478 [274 Pac. 568]; *Wellnitz* v. *Sacramento Suburban etc. Co.,* 97 Cal. App. 51 [274 Pac. 1016, 276 Pac. 154]; *Exchange Bank* v. *Moss,* 149 Fed. 340.) The numerous transactions as to which the court herein admitted evidence reveal a carefully designed plan of concealment calculated to make it difficult, if not impossible, to detect through a maze of manipulation the participation of the defendants who did not deal directly with the persons defrauded. The part which each of the defendants had in the fraudulent scheme can be understood clearly only by consideration of the several exchanges together, with reference to what took place both before and after the exchange with plaintiff Lillian Evans. Acts which might be deemed equivocal were they viewed in relation to a single exchange, permit of but one inference when they are considered in the light of the several successive transactions. A comprehensive account of the entire fraudulent scheme is also important in assessing exemplary damages.

With these preliminary observations we shall review certain transactions involving the Granite Hill Ranch prior to the execution of the note transferred to plaintiff. In 1925, the ranch was sold to one Van Wickle at probate sale, confirmed by the court, for $23,400. A first mortgage for $18,400 was placed on the property, and notes for the aggregate sum of $31,500, payable to one Stokes and wife, and secured by a second deed of trust lien, were executed. John W. Gibson and wife, by assignment, became the holders of said notes and second lien for $31,500. On July 17, 1926, they gave notice of default, and acting through Z. B. Barker, admittedly a "dummy", foreclosed said deed of

trust, bid the property in for $1200, and brought suit for a deficiency judgment. A trustee's deed was issued to Barker on December 7, 1926.

On March 31, 1927, several interdependent escrows involving the Granite Hill Ranch were closed in the office of a title insurance company. In one of said escrows the mortgage for $18,400, executed by the Van Wickles when they acquired the property in 1925, was paid and released. In another escrow Barker, who held title to the Granite Hill Ranch for the Gibsons, executed a deed, dated January 31, 1927, conveying the ranch to Phil D. Rice, who in turn executed a note for $40,000 and a deed of trust, both dated February 1, 1927, in favor of Gibson. This deed of trust constituted a first lien on the ranch.

A deed dated February 8, 1927, executed by Fred A. Newby as attorney-in-fact for Rice, and conveying the ranch to John L. Hittson, was also deposited in escrow. Hittson executed a note and deed of trust in favor of Rice for $32,000. This instrument, when recorded on March 31, 1927, constituted a second lien on the ranch. These several transfers prepared the way for the transaction in which F. A. Leavitt and wife and A. J. Leavitt and wife were defrauded.

The Rice-Hittson note for $32,000, together with said second deed of trust lien, were assigned by Rice, acting through Newby as his attorney-in-fact, to the Leavitts. The Leavitts, by deed dated March 18, 1927, and deposited in escrow with another title company, conveyed to Rice unencumbered real property in Pasadena designated as the Fair Oaks Avenue property. Rice, through Newby as his attorney-in-fact, conveyed the Fair Oaks Avenue property deraigned from the Leavitts to Z. B. Barker, the same person who had held title to the Granite Hill Ranch for Gibson. In addition to the $32,000 second deed of trust note, $10,000 in cash was paid to the Leavitts, which was raised through a bank loan for which Barker executed a note and first mortgage on the property deraigned from the Leavitts. These several instruments, commencing with the release of the $18,400 mortgage on the ranch and including the power of attorney from Rice to Newby, were all recorded on March 31, 1927.

No payments of principal or interest were ever made on the $32,000 note executed by Hittson to Rice, and assigned to the Leavitts, nor were any payments made on the $40,000 note executed by Rice in favor of Gibson, which was secured by first lien on the Granite Hill Ranch. Said note and first deed of trust lien were assigned by Gibson to Kincaid, who recorded a notice of default on May 20, 1927, less than two months after the closing of the escrows on March 31, 1927. Kincaid received a trustee's deed to the ranch on October 4, 1927. That he was acting for Gibson in causing the property to be sold under the deed of trust is an admitted fact.

The Leavitts thereafter brought an action against Gibson, Kincaid and others, claiming that they had been victims of a fraudulent scheme similar to that which plaintiff Evans alleges herein. They recovered judgment for $35,000 actual damages, and $25,000 exemplary damages. Said action is now pending in this court upon an appeal taken by certain of the defendants. The comments we here make upon the evidence introduced in the instant action as to the Leavitt transaction are not for the purpose of prejudging the appeal in the action brought by the Leavitts, but we are considering said evidence for its relevancy in determining questions of fact herein. The appeal in the Leavitt suit will be determined in due course on its own record.

The evidence strongly points to the fraudulent character of the Gibson-Rice-Hittson-Leavitt transactions. The Rice conveyance to Hittson, by Newby as attorney-in-fact for Rice, was not a *bona fide* transfer. To interrogatories propounded to him, Hittson answered that at the request of one McCann, whom he understood to be Kincaid's father-in-law, he became the maker of the note and deed of trust for $32,000, and executed a deed conveying land owned by him in Texas, and worth approximately $300, to Rice. No claim is made that Hittson gave any other consideration for the transfer to him of the Granite Hill Ranch. It is apparent that the deed to the Texas land was placed in the escrow to give the aspect of a *bona fide* exchange. Hittson was never on the Granite Hill Ranch and was worth not more than $1,000, he testified, when he executed the note for $32,000, which he had no intention of paying. On June 13, 1927, he executed a quitclaim deed conveying the

ranch to James L. O'Donahue, the same person who figures in the later transaction, and this deed was recorded on June 15, 1927.

The conclusion is virtually inescapable that the transfer from Gibson to Rice was not a *bona fide* conveyance. Rice was described by witnesses as a young man from the east who was touring California. He executed the note and deed of trust for $40,000, dated February 1, 1927, personally, but the Rice-Hittson deed, dated February 8, 1927, and the Rice-Barker deed of March 18th, by which the Leavitts' Fair Oaks Avenue property was conveyed ·to Gibson's agent, Barker, were executed by Newby, as attorney-in-fact for Rice under a power of attorney dated February 2, 1927, and recorded with the other instruments on March 31, 1927. The explanation given for this was that Rice had left for the east.

The deposition of John W. Gibson, taken before trial, and the transcript of his testimony in the *Leavitt* v. *Gibson* action, were introduced herein. Gibson claimed that the transfer to Rice was a *bona fide* sale for $60,000, with a payment of cash in the sum of $20,000, and the execution of the note and deed of trust for the balance. However, he admitted that Rice did not make a cash payment in any sum whatsoever, but he himself paid $19,600 into escrow, which was used to discharge the mortgage for $18,400 which had existed prior to Gibson's acquiring the ranch. By deed recorded concurrently with the other instruments, Rice conveyed the property deraigned from the Leavitts to Barker, and Barker, who was admittedly acting for Gibson, executed a note and mortgage on said property to raise $10,000 from a bank, which sum was paid to the Leavitts. The loan papers were also recorded on March 31st. To follow the tortuous chain still further, the property deraigned from the Leavitts was part of the consideration given for the transfer by Gertmanian and wife of Pasadena property which subsequently reached Gibson's name through a further intermediary, one Anna Jackson, mother-in-law of Newby.

The claim, reiterated and emphasized throughout this appeal, is that the sum of $19,600, used to discharge the pre-existing $18,400 mortgage, was loaned by Gibson to Rice, and that Gibson took as security title to the Leavitts' prop-

erty in the name of Barker, and permitted Rice to raise the $10,000 paid the Leavitts through a mortgage executed by Barker. The $20,000, or $19,600, cash paid to Gibson by Rice for the conveyance of the ranch was the money which Gibson himself had loaned to Rice. The court rejected this unconvincing explanation.

The final step in the fraud perpetrated on the Leavitts was accomplished through the foreclosure of the first deed of trust lien for $40,000 executed by the dummy Rice in favor of Gibson, which revested title to the ranch in Gibson (in the name of Kincaid), free of the lien of the $32,000 second deed of trust held by the Leavitts. The trustee's deed to Kincaid is dated October 4, 1927. The first steps were taken on December 5, 1927, to the accomplishment of a similar fraudulent scheme, in which not one fraudulent deal, as in the case of the Leavitt exchange, but three separate fraudulent exchanges were made. It is contended on this appeal that the evidence fails to show Gibson's and Kincaid's fraudulent connection with the deal with plaintiff Evans. This contention must be rejected, as was the similar contention advanced as to the Rice-Hittson-Leavitt transaction.

It is urged that the evidence does not show that Gibson authorized Newby to make the false representations as to the financial responsibility of O'Donahue and the value of the Granite Hill Ranch upon which plaintiff Evans relied in making the exchange, or had any knowledge that Newby was making said statements. The conclusion is inevitable that the transaction whereby O'Donahue appeared to be vested with title to the ranch and to execute notes and deeds of trust thereon for sums far exceeding the value of the ranch was not a *bona fide* transfer, but had for the express purpose of creating said notes and deeds of trust to be used for the express purpose for which they were used—to accomplish flagrant frauds. Gibson himself took the three notes and two deeds of trust to O'Donahue, Kincaid's brother-in-law, for execution on December 5, 1927, and at the same time procured O'Donahue to execute and deliver to him a deed conveying the ranch to Gibson's daughter. On the following day he took the deed from Kincaid to O'Donahue and the two deeds of trust to the recorder's office. The deed to Gibson's daughter was not

recorded. Gibson was enabled to dispose of the three notes through the activities of Newby. He knew that these notes, executed by a financially irresponsible maker for amounts far exceeding the value of the ranch, in a purely fictitious transaction, could not be disposed of without the practice of fraud and deception. He cannot escape liability on the pretext, inherently incredible, that he did not authorize or sanction the false representations in fact made. Gibson was engaged in buying and selling real estate, investments and securities on a large scale, and left an estate appraised at more than $788,946. Newby had acted for him in a number of transactions over a period of years.

The executrices of Gibson's estate also sought to exonerate him on the ground that the note transferred to plaintiff Mrs. Evans was not the property of Gibson, but awarded by him to Kincaid for legal services. The trial court by its findings as amended found against this transfer. Even if said note was the property of Kincaid, Gibson was active in causing the instruments of fraud to be created relating to land owned by him, and he could not escape liability when the note was used as intended simply because it may have represented Kincaid's share of the profits of the venture.

The appealing defendants also sought to establish that the transactions by which they disposed of the two $16,000 notes were with Newby as principal on the other side, and that they neither directly nor through the agency of Newby or any other person dealt with either Mrs. Andrews or Mrs. Evans. The trial court by its findings rejected this claim. Said defendants urge that Newby on his own account acquired title to the Andrews' and Evans' property, and that the exchange of the second maturing $16,000 note was for a third deed of trust note for $10,000 on the Andrews property executed by Newby, and the exchange of the $16,000 note due one year from date was for a $15,000 fourth deed of trust note on the Evans property, executed by Anna Jackson, a dummy for Newby. The subsequent transactions with reference to the Evans and Andrews property strongly indicate that the Evans and Andrews transactions were conducted by Newby on behalf of Gibson, or Gibson and Kincaid, and that the $10,000

and $15,000 notes were sham notes. Gibson actually viewed all the properties involved. Disputes also arose out of notes and deeds of trust created on property derived through the Evans and Andrews exchanges by defendants.

The evidence abundantly establishes Kincaid's fraudulent connection with the venture. Before he was admitted to the bar he was employed by a title insurance company as an escrow examiner and escrow agent. He acted as Gibson's attorney throughout the period of the transactions involving the Granite Hill Ranch. He had been on the ranch a number of times and was familiar with land values. Upon Gibson's death he became the attorney for the executrices of his estate. Kincaid prepared and was grantor in the deed of December 5, 1927, transferring the ranch to O'Donahue, his brother-in-law, and also prepared the notes and deeds of trust executed by O'Donahue, through whom the sham transaction of December 5, 1927, was had, and the deed of December 5th from O'Donahue to Thelma Gibson. Kincaid was the payee of said notes, and thereafter assigned them without recourse, and gave written escrow instructions by which they were exchanged for other property. O'Donahue, Kincaid's brother-in-law, was also grantee in the Hittson deed of June 13, 1927, and Kincaid testified that he advised to whom said deed should run. Kincaid claimed to be the owner in his personal right of the $16,000 note maturing one year from date, as compensation for services rendered to Gibson, and Gibson testified that Kincaid had represented him in the Andrews exchange.

In response to a letter written by one Williams, a real estate broker who participated in the transactions with plaintiff Evans and with Mrs. Andrews, Kincaid replied, concerning his brother-in-law: "I wish to advise that in my dealings with Mr. O'Donahue I found him to be dependable and I believe him to be possessed of unusually good moral character. In the transaction in which the note which your friend contemplates purchasing was delivered, no inquiry was made by the undersigned concerning Mr. O'Donahue's general affairs, owing to the fact that reliance was upon the security rather than any such general assets. My contact with Mr. O'Donahue is not such as will enable me to give you any helpful information con-

cerning his business generally, but I am pleased to report to you my very favorable impression as to his moral character.''

Kincaid also participated in the Leavitt transaction. As assignee of Gibson he caused the ranch to be sold under the $40,000 Rice deed of trust, and at the sale purchased on behalf of Gibson. In negotiations with the Leavitts he suggested that the foreclosure proceedings would be abandoned if the Leavitts, who held the second lien, would accept a deed to the ranch, pay several thousand dollars on the Rice note and guarantee the balance.

Appellant executrices contend that much of the testimony of plaintiff and of certain other party witnesses is inadmissible against them under section 1880, subdivision 3, of the Code of Civil Procedure. Said section provides that parties cannot be witnesses upon a claim or demand against the estate of a deceased person as to any matter or fact occurring before the death of such deceased person. Excluding the evidence which may be incompetent, sufficient remains to sustain the judgment against the executrices. The deposition of Gibson taken in the case before trial under section 2055 of the Code of Civil Procedure, was introduced, and the transcript of his testimony taken in the *Leavitt* v. *Gibson* action was introduced herein pursuant to stipulation. Said deposition and transcript in themselves provide damaging evidence against Gibson. Furthermore, there is some authority that the adverse party may render himself competent by introducing the deposition of the decedent taken before his death. (Jones on Evidence, 3d ed., p. 1211.)

The judgment must be affirmed in so far as it awards compensatory damages to plaintiff. But the award of $5,000 exemplary damages against all defendants cannot be sustained as to the defendant executrices. An action in tort to recover compensatory damages for injury to property, rather than to the person, survives, but after the death of the defendant tort-feasor exemplary damages cannot be awarded against his estate or his executrices. Such damages are allowed ''in addition to actual damages'', and ''for the sake of example and by way of punishing the defendant''. (Sec. 3294, Civ. Code.) In *Pacific etc. Co.* v. *Packers' Assn.*, 138 Cal. 632, 638 [72 Pac. 161], it is declared that ''punitive damages are given as punishment

beyond what a plaintiff has actually suffered". Since the purpose of punitive damages is to punish the wrongdoer for his acts, accompanied by evil motive, and to deter him from the commission of like wrongs in the future, the reason for such damages ceases to exist with his death. It is true that the infliction of punishment serves as a deterrent to the commission of future wrongs by others, as well as by the wrongdoer, but punitive damages by way of example to others should be imposed only on actual wrongdoers.

The author of an annotation in 65 A. L. R. 1049 finds the rule well settled that punitive or vindictive damages cannot be awarded against the estate of the tort-feasor. (*Sullivan* v. *Associated Bill-posters, etc.*, 6 Fed. (2d) 1000 [42 A. L. R. 503]; *Lane* v. *Schilling*, 130 Or. 119 [279 Pac. 267, 65 A. L. R. 1042]; *Morris* v. *Duncan*, 126 Ga. 467 [54 S. E. 1045, 115 Am. St. Rep. 105]; *Sheik* v. *Hobson*, 64 Iowa, 146 [19 N. W. 875]; *Hewlett* v. *George*, 68 Miss. 703 [9 So. 885, 13 L. R. A. 682]; *Rippey* v. *Miller*, 33 N. C. 247; *Wright* v. *Donnell*, 34 Tex. 291.) The annotation cites no cases announcing the contrary rule, counsel in the appeal herein have cited none, and we have found no contrary authority. In *Morris* v. *Duncan, supra*, the rule is thus stated:

"Damages which are given merely as a punishment to deter the wrongdoer from a repetition of the offense clearly have no reference to compensation for the wrong inflicted. The award of such damages against the estate of a wrongdoer no longer in life must fail of its object, and could not therefore be allowed."

There are other applications of the rule that punitive damages may be visited only upon the actual wrongdoer in proportion to his guilt. A principal, although liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held for exemplary damages unless he is personally implicated. (*Warner* v. *Southern Pacific Co.*, 113 Cal. 105 [45 Pac. 187, 54 Am. St. Rep. 327]; 8 Cal. Jur. 870.) Exemplary damages may be awarded against several joint tort-feasors in different amounts, depending upon the degree of culpability, but compensatory damages cannot be thus apportioned. (*Thom-*

*son* v. *Catalina,* 205 Cal. 402 [271 Pac. 198, 62 A. L. R. 235].)  In *Lane* v. *Schilling,* 130 Or. 119 [279 Pac. 267, 65 A. L. R. 1042], it is held that the receiver of an insolvent bank is not liable in punitive damages for malicious acts of officers committed before he assumed control.

In *Leavitt* v. *Gibson,* to which we have heretofore referred, now pending in this court, both parties had presented their evidence and rested prior to the death of Gibson, and a certain minute order had been made. We do not here decide the question involved in that case as to the power of the trial court under such circumstances to preserve the plaintiff's right to exemplary damages by entry of judgment *nunc pro tunc* as of a date antedating Gibson's death.  In the instant case Gibson died after commencement of the action but prior to trial, and his executrices cannot be held liable for exemplary damages either directly or by *nunc pro tunc* entry.

The appellants contend that the judgment includes interest erroneously computed.  One defrauded in the exchange of property is entitled to recover the difference between the actual value of what he received and the value it would have had if it had been as represented.  The note received by plaintiff was found to be worthless.  Appellants contend that if it had been as represented it would have been paid at maturity, on December 5, 1928, one year from its date, and that its represented value is its due date value —$16,000, plus interest for one year at eight per cent, the rate fixed in the note.  The court below correctly allowed interest at the rate of eight per cent up to the date of the findings and judgment, September 26, 1931.  It does not follow that the note would have been paid at maturity if the representations concerning it had been true.  Notes executed by solvent makers are frequently permitted to run beyond their due dates.  In fact the note herein was not paid.  In this situation if it had been as represented its value would have included interest beyond its maturity date, as provided for in the note.

We find no error requiring a reversal of the judgment. If the second deposition of Newby as a matter of law was inadmissible, said deposition is not necessary to sustain the judgment against appellants.

The judgment is modified by eliminating the award of exemplary damages against the defendant executrices. As thus modified it is affirmed, each party to bear his own costs on appeal.