MANSFIELD, Justice.
The sole question presented by this appeal is whether a right to punitive damages survives the death of the wrongdoer. On several previous occasions, we have held that punitive damages may not be recovered from the estate of a deceased tortfeasor. See Rowen v. Le Mars Mut. Ins. Co., 282 N.W.2d 639, 661 (Iowa 1979); Wolder v. Rahm, 249 N.W.2d 630, 632 (Iowa 1977); Stevenson v. Stoufer, 237 Iowa 513, 517, 21 N.W.2d 287, 288 (1946); Sheik v. Hobson, 64 Iowa 146, 147-48, 19 N.W. 875, 875-76 (1884). Upon our review, we are not persuaded that we should reconsider these precedents. Therefore, we affirm the judgment below.
I. Background Facts and Proceedings.
Bill Ernst, Inc. owns a thirty-three-acre tract of land north of Marshalltown. The Ernst property is bordered by Highway 14 to the west, property owned by Johnny Vajgrt to the north, city-owned property to the east, and the Iowa River to the south. Burnett Creek meanders in a generally southerly direction to the Iowa River, at times through the eastern portion of the Ernst property and at times through the western edge of the property owned by Marshalltown. The Ernst property is an undeveloped, largely wooded area located in a floodplain that floods annually. Ernst uses the land for recreational purposes.
Burnett Creek also flows southerly through Vajgrt’s property before it reaches the Ernst property. In the fall of 2005, Vajgrt became concerned that a fallen tree near the confluence of Burnett Creek and the Iowa River would create a dam and cause water to back up onto his land. Therefore, Vajgrt sought permission to enter onto Ernst’s land to remove the tree. Bill Ernst initially refused Vajgrt’s request, but after the City of Marshalltown agreed that Vajgrt could access its land to remove the tree, and Vajgrt explained to Ernst that it would be more convenient to go through Ernst’s property, Ernst gave Vajgrt permission to come onto his property to remove the fallen tree.
Ernst then left on a hunting trip to Colorado. During that time, Vajgrt went onto Ernst’s property with another individual. Instead of just removing the fallen tree, however, Vajgrt and the other person used their equipment to tear out approximately forty live trees that were on Ernst’s property along Burnett Creek.
When Ernst returned from his trip, he was angry to have found that Vajgrt had uprooted numerous trees, instead of just removing the single tree for which he had been given permission. Ernst did not pursue a legal claim at that time, however.
Vajgrt passed away on November 4, 2008. On April 23, 2009, Ernst filed a claim in probate seeking compensatory damages for the diminution to the value of his property, the value of the trees, and the expense of restoration, as well as punitive damages.[1]
*573 Following a contested hearing, the district court awarded Ernst $57.50 per tree removed from Ernst’s property for a total of $2300, but declined to award any punitive damages, stating, “[I]t is well-settled in Iowa that while a tort action survives the death of the tortfeasor, punitive damages cannot be awarded against the administrator of the tortfeasor’s estate.” Ernst appeals, raising only the legal issue whether a claim for punitive damages should abate upon the death of a tortfeasor.
II. Standard of Review.
Whether a claim for punitive damages survives the death of a tortfeasor and may be pursued against the tortfeasor’s estate is a legal question. Therefore, our review is for the correction of errors at law. Iowa R.App. P. 6.907; Bremer v. Wallace, 728 N.W.2d 803, 804 (Iowa 2007).
III. Analysis.
The long-standing rule in this state bars the recovery of punitive damages when the tortfeasor dies before judgment. In Sheik, decided when Iowa had been a state for less than forty years, we first announced this rule. 64 Iowa at 147-48, 19 N.W. at 875-76. Sheik involved a suit for slander. Allegedly, the defendant stated falsely in the presence of the plaintiffs husband that he had had sexual intercourse with the plaintiff. Id. at 146, 19 N.W. at 875. The defendant died during the pendency of the case, however, and the district court declined to instruct the jury on punitive damages against his estate. Id. at 146-47, 19 N.W. at 875. The plaintiff appealed, and we affirmed, explaining:
Such damages are awarded as a punishment of the man who has wickedly or wantonly violated the rights of another, rather than for the compensation of the one who suffers from his wrongful act. It is true, they are awarded to the one who has been made to suffer; but not as a matter of right. For, while he is entitled under the law to such sum as will fully compensate him for the injury sustained, the question whether punitory damages shall be assessed, and the amount of the assessment, is left to the discretion of the jury.
Plaintiff had a right of action, on account of the slanderous words spoken by [the defendant], for such sum as would compensate her for the injury. This was her cause of action, and this is what was preserved to her by the statute at his death. But she had no personal interest in the question of his punishment. So far as he was concerned, the punitory power of the law ceased when he died. To allow exemplary damages now would be to punish his legal and personal representatives for his wrongful act, but the civil law never inflicts vicarious punishment.
Id. at 147-48, 19 N.W. at 875-76. In short, Sheik emphasized that, because the role of punitive damages is punitive, rather than compensatory, such damages should not be awarded when the person to be punished has died.
This holding was subsequently reiterated in Stevenson, 237 Iowa at 517, 21 N.W.2d at 288 (“[T]he right to such damages did not survive the death of the wrongdoer either at common law or under our survivorship statute[.]”), Wolder, 249 N.W.2d at 632 (“[A] right to punitive damages does not survive the wrongdoer’s death[J”), and Rowen, 282 N.W.2d at 661 (“[S]uch an award is not made against one deeeased[.]”).
Ernst argues that this line of authority is now obsolete and should be overruled. Ernst relies on Iowa’s current survival statute as set forth in Iowa Code section 611.20 (2009), Iowa’s punitive damages statute as set forth in Iowa Code chapter *574 668A, and our own recognition in various cases that punitive damages not only punish the tortfeasor, but also deter others from like conduct. For the reasons stated herein, we find none of these arguments persuasive.
A. Iowa Code Section 611.20. According to Iowa’s survival statute, “[a]ll causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.” Iowa Code § 611.20. Ernst argues that this provision “would logically lean toward the allowance of [punitive] damages” even after the death of the tortfeasor.
However, one potential problem with Ernst’s position is that punitive damages do not constitute a distinct “cause of action.” Rather, they are a form of relief incidental to the main cause of action. Sebastian v. Wood, 246 Iowa 94, 100, 66 N.W.2d 841, 844 (1954). Furthermore, Iowa had a similar survival statute in effect in 1884 when Sheik was decided. 64 Iowa at 147, 19 N.W. at 875 (citing Iowa Code section 2525 (1873), which provided that all causes of action “may be brought, notwithstanding the death of the person entitled or hable to the same”). We specifically rejected the same proposed construction of the survival statute back then, id., and the legislature has reenacted the survival statute in various forms without attempting to disturb our holding in Sheik.
“The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute.” State v. Jones, 298 N.W.2d 296, 298 (Iowa 1980). “[W]e often infer legislative assent to our precedents from prolonged legislative silence.” McElroy v. State, 703 N.W.2d 385, 395 (Iowa 2005). The rule of stare decisis
“is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature.”
Iowa Dep’t of Transp. v. Soward, 650 N.W.2d 569, 574 (Iowa 2002) (quoting Cover v. Craemer, 258 Iowa 29, 34-35, 137 N.W.2d 595, 599 (1965)).
In short, reliance on the survival statute did not carry the day when Sheik was decided. If anything, the argument has less force today, given the legislature’s repeated reenactment of the survival statute without attempting to disturb the holding in Sheik.
B. Iowa Code Chapter 668A. In 1986, the general assembly enacted a law relating to punitive or exemplary damages. See 1986 Iowa Acts ch. 1211, § 42 (codified at Iowa Code ch. 668A (1987)). Under the statute, as revised in 1987, see 1987 Iowa Acts ch. 157, § 10, a plaintiff may recover punitive or exemplary damages if the plaintiff proves “by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.” Iowa Code § 668A.K1) (a), (2) (2009). If the plaintiff also shows that the defendant’s conduct was “directed specifically” at the plaintiff, then the plaintiff shall be paid the full amount of the punitive or exemplary damages awarded. Id. § 668A.1(1)(6), (2)(a). However, if the defendant’s conduct was not directed specifically at the plaintiff, the plaintiff may only receive up to twenty-five percent of the punitive or exemplary damages awarded, with the remainder being paid into a civil reparations trust fund to help pay for indigent civil litigation programs or insurance assistance programs. Id. § 668A.1(1)(&), (2)(6).
*575 But chapter 668A is silent on whether punitive damages survive a tortfeasor’s death. Therefore, it is difficult to make the case that the legislature intended to overturn the existing precedents in this area. Jones, 298 N.W.2d at 298. Our court had just reiterated the rule that punitive damages do not survive the tort-feasor’s death in 1977 and again in 1979. It seems more plausible to conclude the legislature did not intend to change this recent case law when it enacted wide-ranging legislation on the subject of punitive damages in 1986 without addressing the recoverability of punitive damages from estates. We are not persuaded that the enactment of chapter 668A should lead us to reconsider our long-standing precedents.
C. The Policies Behind Punitive Damages. We have said that punitive or exemplary damages serve three purposes: (1) punishment, (2) specific deterrence, and (3) general deterrence. Sebastian, 246 Iowa at 100, 66 N.W.2d at 844 (Punitive damages serve “as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner. The award of such damages constitutes an effective deterrent to such offenders, and a salutary protection to society and the public in general.”); see also McClure v. Walgreens Co., 613 N.W.2d 225, 230 (Iowa 2000) (“Punitive damages serve ‘as a form of punishment and to deter others from conduct which is sufficiently egregious to call for the remedy.’ ” (quoting Coster v. Crookham, 468 N.W.2d 802, 810 (Iowa 1991))).
Citing this case law, Ernst argues that the general deterrence role of punitive damages would be advanced by allowing recovery of such damages from a tortfea-sor’s estate. As Ernst puts it, “Sheik was decided in a day when the only purpose of exemplary damages was that of punishment. The additional purpose of exemplary damages presently is to discourage/deter others from like conduct in the future.”
We agree with Ernst that Sheik did not address this potential goal of punitive damages. It simply contrasted the compensatory function of actual damages with the “punitory” function of punitive damages. Yet by the time Rowen was decided in 1979, we were making it clear that “punitive damages serve two main purposes[:] to punish and to deter.” 282 N.W.2d at 662; see also id. at 661 (“[Tjhey are allowed as both a punishment to the wrongdoer and a deterrent to others[.j”). Even so, in Rowen, we again reiterated the Sheik holding that punitive damages abate upon the death of the tortfeasor. Id. at 661. Thus, regardless of any possible broadening of the potential goals served by punitive damage awards, we have previously adhered to the rule that punitive damages should not be awarded against the estate of a wrongdoer. We therefore do not believe that Ernst’s policy arguments warrant a reconsideration of our precedents.
Notably, Iowa follows the same approach with respect to criminal prosecutions. It has long been the law in this state that a criminal prosecution abates upon the death of the defendant. See Maghee v. State, 773 N.W.2d 228, 231 n. 2 (Iowa 2009) (citing authorities). Even though criminal fines may have a general deterrence effect on other wrongdoers, the state may not continue a criminal proceeding after the defendant dies to recover a fine from his or her estate. See State v. Kriechbaum, 219 Iowa 457, 458-61, 258 N.W. 110, 110-12 (1934) (holding that when a defendant dies while his conviction is on appeal, the action abates in toto and ab initio, and the costs of prosecution cannot be assessed against the defendant’s estate); Babbitt v. Corrigan, 157 Iowa 382, *576 383, 138 N.W. 466, 467 (1912) (stating that, in the criminal context, “[pjunishment cannot be imposed upon a dead man, nor can penalties be imposed as against his estate”); cf. Pac. Mwt. Life Ins. Co. v. Haslip, 499 U.S. 1, 19, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1, 20 (1991) (noting that punitive damages have been described as quasi-criminal).
Also, Iowa’s rule in this area is not unique. Most other jurisdictions disallow punitive damage recoveries after the wrongdoer has died.[2] At present, approximately thirty-one jurisdictions in addition to Iowa follow this approach.[3] Most of these jurisdictions (like Iowa) do so because of appellate court rulings, rather than legislative enactments expressly pro *577 hibiting punitive damage recoveries.[4] In fact, in a number of jurisdictions that follow the majority rule, there are general survival statutes similar to Iowa Code section 611.20.[5] Nevertheless, their courts found that punitive damage recoveries did not survive the death of the tortfeasor.
The minority view allows recovery of punitive damages even when the wrongdoer has died.[6] But only about eleven jurisdictions have adopted this position. And it would be difficult to argue there is a trend toward it. For example, within the last decade, supreme courts in at least three states have ruled for the first time that punitive damages are not recoverable after the tortfeasor’s death.[7]
Finally, our case presents another possible reason why it may be appropriate for punitive damage claims to abate upon the death of the tortfeasor. Here, the decedent Vajgrt entered upon Ernst’s property and caused the trees to be removed in 2005, but Ernst did not seek judicial redress until 2009, when he filed a claim in probate against Vajgrt’s estate. While no one contests the timeliness of the claim, see Iowa Code § 614.1(4) (five-year statute of limitations for injuries to property), Vajgrt is no longer available to defend himself and testify why he did not act with “willful and wanton disregard for the rights or safety of another.” Id. § 668A.l(l)(a). In a circumstance in which the actor’s state of mind is important, direct evidence of that state of mind is no longer available.
This argument can be pressed too far. Under the rule in Sheik, punitive damages may not be recovered if the tortfeasor dies before judgment, even if the tortfeasor had the opportunity to testify on his or her own behalf.
At the same time, we believe this is an area in which all the policy arguments can be pressed too far. For example, we doubt that the typical tortfeasor makes a calculation about the possibility of a punitive damage award against his or her estate, should he or she die before judgment. *578 Thus, the marginal deterrence gain from a rule allowing punitive damages to be awarded against decedent’s estate seems to us relatively small. All the more reason, therefore, to defer to our established precedents and the legislature’s prior decisions not to disturb them.
IY. Conclusion.
For the foregoing reasons, we affirm the judgment of the district court, including its refusal to award punitive damages against Vajgrt’s estate. '
AFFIRMED.
All justices concur except WIGGINS and APPEL, JJ., who concur specially, and HECHT, J., who dissents.

. Ernst did not assert the statutory claim for treble damages that is available when a person "willfully injuries] any timber, tree, or shrub on the land of another." Iowa Code § 658.4 (2009); see also Johnson v. Tyler, 277 N.W.2d 617, 618-19 (Iowa 1979) (holding a plaintiff cannot recover both treble damages under section 658.4 and punitive damages under the common law). We assume Ernst did not bring such a claim because the statute of limitations for actions seeking a statutory penalty had expired. See Iowa Code § 614.1(2) (two-year statute of limitations applies to actions "for a statute penalty”).

. See Jay M. Zitter, Annotation, Claim for Punitive Damages in Tori Action as Swviving Death of Tortfeasor or Person Wronged, 30 A.L.R.4th 707, 712-13 (1984); Timothy R. Robicheaux & Brian H. Bornstein, Punished, Dead or Alive: Empirical Perspectives on Awarding Punitive Damages Against Deceased Defendants, 16 Psychol. Pub. Pol’y & L. 393, 413 (2010) ("The majority of jurisdictions that have considered the issues have barred punitive damages against deceased defendants, but courts usually must interpret civil statutes that are silent on the issue.”).

. The following jurisdictions currently adhere to tire majority approach: Idaho Code Ann. § 5-327(1) (West, Westlaw through 2011 Chs. 1-335); Vt. Stat. Ann. tit. 14, § 1454 (West, Westlaw through 2011 Sess. No. 28); Fehrenbacher v. Quackenbush, 759 F.Supp. 1516, 1521-22 (D.Kan.1991) (applying Kansas law); Sanchez v. Marquez, 457 F.Supp. 359, 364 (D.Colo. 1978) (applying Colorado law) (currently codified at Colo.Rev.Stat. Ann. § 13-20-101(1) (West, Westlaw through July 1, 2011)); Doe v. Colligan, 753 P.2d 144, 146 (Alaska 1988); Evans v. Gibson, 220 Cal. 476, 31 P.2d 389, 395 (1934) (subsequently codified at Cal.Civ.Proc.Code § 377.42 (1992)); Jonathan Woodner Co. v. Breeden, 665 A.2d 929, 938-40 (D.C.1995); Lohr v. Byrd, 522 So.2d 845, 846-47 (Fla. 1988); Morris v. Duncan, 126 Ga. 467, 54 S.E. 1045, 1046-47 (1906) (subsequently codified at Ga.Code Ann. § 9-2-41 (West, Westlaw through 2011 Reg. Sess.)); Crabtree ex rel. Kemp v. Estate of Crabtree, 837 N.E.2d 135, 138-40 (Ind.2005); Stewart v. Estate of Cooper, 102 S.W.3d 913, 915-16 (Ky.2003); Edwards v. Ricks, 30 La. Ann. 926, 928 (1878); Prescott v. Knowles, 62 Me. 277, 279 (1874) (currently codified at Me.Rev.Stat. Ann. tit. 18-A, § 3-818 (West, Westlaw through 2011 1st Reg. Sess.)); Wilkins v. Wainwright, 173 Mass. 212, 53 N.E. 397, 397-98 (1899) (currently codified at Mass. Gen. Laws Ann. ch. 230, § 2 (West, Westlaw through 2011 1st Annual Sess. Ch. 67)); Thompson v. Estate of Petroff 319 N.W.2d 400, 408 (Minn. 1982); Hewellette v. George, 68 Miss. 703, 9 So. 885, 887 (1891) (subsequently codified at Miss.Code Ann. § 91-7-235 (West, Westlaw through 2011 legislative sessions)), ovemtled on other grounds by Glaskox ex rel. Denton v. Glaskow, 614 So.2d 906, 907 (Miss. 1992); Tietjens v. Gen. Motors Corp., 418 S.W.2d 75, 88 (Mo.1967); Allen v. Anderson, 93 Nev. 204, 562 P.2d 487, 489-90 (1977) (subsequently codified at Nev. Rev.Stat. Ann. § 41.100(2) (West, Westlaw through 2010 Special Sess.)); Jaramillo v. Providence Wash. Ins. Co., 117 N.M. 337, 871 P.2d 1343, 1350-52 (1994); Gordon v. Nathan, 43 A.D.2d 917, 352 N.Y.S.2d 464, 465 (1974) (currently codified at N.Y. Est. Powers & Trusts Law § 11-3.2(a)(1) (McKinney, Westlaw through 2011 Sess.)); Harrell v. Bowen, 179 N.C.App. 857, 635 S.E.2d 498, 500 (2006); Mongold v. Estate of Gilbert, 114 Ohio Misc.2d 32, 758 N.E.2d 1245, 1247-49 (Ohio Ct.C.P.2000); Morriss v. Barton, 200 Okla. 4, 190 P.2d 451, 459-60 (1947); Ashcraft v. Saunders, 251 Or. 139, 444 P.2d 924, 926-27 (1968) (currently codified at Or.Rev. Stat. Ann. § 30.080 (West, Westlaw through 2011 emergency session)); Aldrich v. Howard, 8 R.I. 125, 127 (1864) (currently codified at R.I. Gen. Laws Ann. § 9-1-8 (West, Westlaw through Jan. 2010 Sess. Ch. 321)); Olson-Roti v. Kilcoin, 653 N.W.2d 254, 260-62 (S.D. 2002); Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213, 217 (1965); In re Estate of Garza, 725 P.2d 1328, 1330 (Utah 1986); Dalton v. Johnson, 204 Va. 102, 129 S.E.2d 647, 650-51 (1963) (subsequently codified at Va.Code Ann. § 8.01-25 (West, Westlaw through 2011 Reg. Sess.)); McWilliams v. Bragg, 3 Wis. 424, 431 (1854) (currently codified at Wis. Stat. Ann. § 895.02 (West, Westlaw through 2011 Act 31)); Parker v. Artery, 889 P.2d 520, 524-25 (Wyo.1995); see also Restatement (Second) of Torts §§ 908 cmt. a, 926(b) (1979).

. Seventeen of the thirty-one jurisdictions referenced in the previous footnote deny punitive damage awards against tortfeasor estates as a matter of judicial precedent, despite the lack of any statute directly on point. Furthermore, in a number of the remaining fourteen jurisdictions, the statutes in question were adopted after appellate courts had already ruled that punitive damages were not recoverable after the wrongdoer died.

. Alaska Stat. Ann. § 09.55.570 (West, West-law through 2010 2nd Reg. Sess.); D.C.Code § 12-101 (West, Westlaw through May 10, 2011); Fla. Stat. Ann. § 46.021 (West, West-law through July 1, 2011); Ind.Code Ann. § 34-9-3-1 (West, Westlaw through 2011); Minn.Stat. Ann. § 573.01 (West, Westlaw through 2011 Reg. Sess. Ch. 19).

. The following jurisdictions currently follow this rationale: Ellis v. Zuck, 546 F.2d 643, 644-45 (5th Cir.1977) (applying Alabama law); In re Thomas, 254 B.R. 879, 887 (D.S.C. 1999) (applying South Carolina law); Haralson v. Fisher Surveying, Inc., 201 Ariz. 1, 31 P.3d 114, 115 (2001); Estate of Farrell ex rel. Bennett v. Gordon, 770 A.2d 517, 521-22 (Del. 2001); Kaopuiki v. Kealoha, 104 Hawaii 241, 87 P.3d 910, 924-28 (Haw.Ct.App.2003); Penberthy v. Price, 281 Ill.App.3d 16, 216 Ill.Dec. 902, 666 N.E.2d 352, 354-57 (1996); Tillett v. Lippert, 275 Mont. 1, 909 P.2d 1158, 1161-62 (1996); G.J.D. v. Johnson, 552 Pa. 169, 713 A.2d 1127, 1129-31 (1998); Hofer v. Lavender, 679 S.W.2d 470, 474-75 (Tex.1984); Perry v. Melton, 171 W.Va. 397, 299 S.E.2d 8, 11-13 (1982); see also Munson v. Raudonis, 118 N.H. 474, 387 A.2d 1174, 1177-78 (1978) (stating that although New Hampshire law does not allow for punitive damages, compensatory damages survive the death of the tort-feasor and the "compensatory damages awarded may reflect the aggravating circumstances" when wanton, malicious, or oppressive conduct is involved).

.See Crabtree, 837 N.E.2d at 139; Stewart, 102 S.W.3d at 916; Olson-Roti, 653 N.W.2d at 260-62.